Arthur S. ADAMS, Plaintiff-Appellee,

v.

Arthur FLEMMING, Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 189, Docket 25902.

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1960.

Decided April 8, 1960.

Herbert E. Mooris, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Louis G. Whitcomb, U. S. Atty., District of Vermont, Rutland, Vt., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for defendant-appellant.

Arthur S. Adams, pro se.

Before MOORE, Circuit Judge, and SMITH and HERLANDS, District Judges.

MOORE, Circuit Judge.

Arthur Flemming, Secretary of Health, Education and Welfare (the Secretary) appeals from a decision of the district court granting summary judgment in favor of plaintiff in a civil action for judicial review of the determination by the Social Security Administration that plaintiff was not entitled to a period of disability or disability insurance benefits, provided for in sections 416(i) and 423(c) (2), 42 U.S.C.A. The equities as well as the more technical construction and application of the statute depend upon the facts.

From 1918 to 1946 Arthur S. Adams (plaintiff), born in 1899 and a resident of Middlebury, Vermont, after completing high school, worked steadily for the Insurance Company of North America (the Company). He had done well. In 1946 he was the manager of the Marine Service Department and Inland Claims, his salary was $9,000 a year and he had twenty-four employees under his supervision. His work was "executive type, desk work." For some years prior to 1946 he had been troubled by a sinus condition. Hopeful of obtaining relief, in 1946 plaintiff submitted to an operation which was not successful.

In May 1946 the Company "reluctantly arranged" for plaintiff's retirement, relying upon his judgment as to his physical condition and upon the opinion of the Company's medical consultant. The Company paid plaintiff $3,000 a year as a disability allowance, effective until 1964 when he becomes eligible for a Company pension. From 1946 on plaintiff did not engage in work and by his answer "no" indicated an unwillingness to have his name referred to the appropriate State Rehabilitation Agency with information about his disability and work history. He lived in Middlebury where he did light work at his home and took short walks.

In 1957 plaintiff filed with the Bureau of Old-Age and Survivors Insurance applications (1) to establish a period of disability and (2) to obtain disability insurance benefits. In support thereof plaintiff submitted his affidavit outlining his medical history since 1946 and various medical reports. The applications were denied by the Bureau and plaintiff thereupon requested a hearing. However, he waived his right to appear and to present evidence and elected to rest his case on the documents filed with the Bureau.[1] The Referee analyzed the evidence with particularity and found in substance that plaintiff "had a rather severe sinus condition over a period of years," which caused certain distress and discomfort restricting his activities for temporary periods in certain types of

---

1. In the "Request for Hearing" signed by plaintiff is the checked statement "I have no additional evidence to submit; therefore, I waive my right to appear and give evidence, and hereby request a decision by a referee on the present evidence of record."

weather but that plaintiff's "impairment and resulting limitation of activities seems to fall far below the level of severity of an impairment contemplated by the Act as being totally disabling." Accordingly, the Referee decided that plaintiff "is not entitled to a period of disability or disability insurance benefits * * *."

Plaintiff then requested a review of the Referee's decision by the Appeals Council, which after receiving two more medical reports and considering the entire record adopted "All of the inferences, findings and conclusions of the referee based upon the evidentiary facts" and affirmed his decision.

■■ Plaintiff thereupon sought judicial review by way of a motion for summary judgment in the district court. The controlling principles of law upon such a review are well established and were recognized by the Court, namely, "the burden of sustaining the claim for benefits is on the claimant" and "The findings of the Social Security Agency are final and binding if there is a substantial basis for them. Such finality extends to inferences and conclusions drawn from the evidence" (D.Vt., 173 F.Supp. 873, 877).

Two fundamental questions are presented: (1) did plaintiff sustain his burden of showing that he came within the class of persons contemplated by the statute (42 U.S.C.A. § 423(c) (2)) as having an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration"; (2) is there any substantial basis for the Agency's determination that plaintiff was not entitled to the claimed disability benefits.

The district court in its opinion injected into the case an element not found either in the statute or in the referee's

decision, namely, total disability. It then assumed that total disability means that "one must be bedridden, completely paralyzed, or unable to lift a finger." Obviously there is no such requirement in the law and the referee did not even imply that there is. He simply found that the impairment did not preclude plaintiff from engaging in any substantial work. This finding seems well supported by the evidence, viz., that the sinus condition antedated plaintiff's retirement by many years, that the medical reports he submitted indicated that antihistamine treatment would control and somewhat alleviate the condition, and that none of the doctors stated that plaintiff was unable to engage in any substantial gainful activity.

There are other aspects of this case which bear upon the decision. Plaintiff had worked for 28 years afflicted at least towards the latter third of this time with an aggravated sinus condition. Much of the time appears to have been spent in Vermont. It is most significant that when he decided in 1946 at the age of forty-seven to give up his position there is a complete absence of proof as to his reasons.[2] Where the burden is upon the plaintiff to establish his case, it would be expected that the record would be replete with testimony from various employees or officers of the Company that plaintiff because of his sinus condition had been absent from the office for protracted periods, that the quality of his work had suffered, that he was unable to carry on his duties and for this reason he or the Company had suggested retirement. To supply medical testimony one or more doctors could have been called who could have testified, if it were the fact, that his physical condition rendered him unfit for work. As a minimum plaintiff himself could have testified that his sinus condition and headaches, if any, resulting therefrom were so severe and continuous that he could

---

**2.** The district court's statements that plaintiff's employer determined that he was "unable to work" and that he was "dismissed" do not find support in the record.

not concentrate upon his work or render honest and fair service to his employer. Plaintiff himself had every opportunity to testify as to how his sinus condition adversely affected his ability to do any work. He did not do so but instead chose to rely on various documents and reports and to introduce no evidence whatsoever along the lines mentioned.

■■ His daily routine in Vermont seems to be little different from that of office work in Vermont. In the same climate he did light work at home, whereas in the office he would have been sitting at a desk. He took short walks in the same area he would have been traversing going to and from work. The significance of any mention of inability to work in the medical reports cannot be overlooked. Were this the fact surely some doctor would have been willing to make such a statement. Judicial notice can be taken of the fact that the human anatomy is subjected to many ills. There are undoubtedly millions of people suffering daily from some infirmity: those who go to work with sinus conditions in varying degrees; those whose arthritic and rheumatic symptoms flare up and subside; those who are afflicted with migraine headaches which seriously affect temporarily their ability to work; and those who suffer from various spinal ailments and discomforts. None of these persons can be said to be unable "to engage in any substantial gainful activity." [3]

■ The Vermont State Agency concluded that as of January 1957 Adams' impairment did not "have a level of severity to preclude all substantial gainful activity." The referee and the Appeals Council reached the same conclusion. The intent of Congress as expressed in the statute itself and in the legislative history surely was not to provide disability benefits for all who had some physical ill and chose to retire without making any effort to obtain any work. Since 1946 plaintiff then a comparatively young man has put himself into voluntary retirement. In 1958 he prepared and argued his case *in persona* before the district court. In 1960 he argued (and argued well) his appeal before this court. In so doing he did not exactly convey the impression of a man in such bad health that he should have permanently placed himself on the sidelines as precluded from any gainful activity.

The judgment below is reversed and the case remanded with instructions to enter judgment for the defendant-appellant.

---

**3.** The district court apparently construed this statutory criterion as meaning disability to undertake the claimant's previous occupation. But such a construction ignores the history of the 1954 Amendments to the Social Security Act, e. g., the explanatory discussion in the Senate Committee on Finance, No. 1987, pp. 20–21, 83rd Cong., 2nd Sess., U.S. Code Congressional and Administrative News, 1954, p. 3730 "that the individual be disabled not only for his usual work but also for any type of substantial gainful activity." This report was emphasized by Judge Foley in Ussi v. Folsom, D.C.N.D.N.Y.1957, 157 F.Supp. 679, 680, affirmed 2 Cir., 254 F.2d 842, and by Judge Bryan in Julian v. Folsom, D.C. S.D.N.Y.1958, 160 F.Supp. 747, 752. It is true that Judge Kaufman, in Jacobson v. Folsom, D.C.S.D.N.Y.1957, 158 F.Supp. 281, appears to have leaned toward a theory of specific occupational disability, but his opinion should be read merely to require that the claimant's age, training and experience be considered when determining what activities, if any, are open to him. In other words, "he is not required to sell apples or to start his own business" (Hallard v. Fleming, D.C.W.D. Ark.1958, 167 F.Supp. 205, 209), but neither is he entitled to make no effort to secure some sort of gainful employment.