Loree Elsie CALDWELL, Plaintiff,

v.

Honorable Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare of the United States, Defendant.

Civ. A. No. 3069.

United States District Court
W. D. South Carolina,
Greenville Division.

Sept. 19, 1964.

Kenneth M. Powell, Spartanburg, S. C., for plaintiff.

John C. Williams, U. S. Atty., James D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, District Judge.

This is an action by the plaintiff Loree Elsie Caldwell to review a final decision of the defendant Secretary, denying the

plaintiff's application for a period of disability and disability benefits authorized by the Social Security Act, as amended, Title 42 U.S.C.A. §§ 416(i) (1) and 423. Jurisdiction exists pursuant to Section 205(g) of the Social Security Act, Title 42 U.S.C.A. § 405(g).

Under the review provision, 42 U.S.C.A. § 405(g), I am limited to a determination as to whether the Secretary's findings are supported by substantial evidence.

In accordance with such determination I may, on the basis of the record, enter judgment affirming, modifying or reversing the Secretary's decision, with or without remanding the case for a rehearing. A hearing de novo may not be held on the record and I may not in considering the facts substitute my findings or inferences for those of the Hearing Examiner which are supported by substantial evidence.

"Substantial evidence" means enough to justify a refusal to direct a verdict when the conclusion sought to be drawn from it be one of fact for the jury. Dowling v. Ribicoff, 200 F.Supp. 543 (D. C., 1961); Woolridge v. Celebrezze, 214 F.Supp. 686 (D.C., 1963).

Plaintiff met the special earnings requirements of the Act for disability purposes in the quarter of alleged onset of disability, the second quarter of 1957, and she continued to meet the earnings requirements through the date of filing her disability application on October 20, 1959. To be entitled to disability insurance benefits and the establishment of a period of disability, the plaintiff had to establish that since May 6, 1957, or beginning at a time when she met the special earnings requirements of the Act for disability purposes, and continuing to the date of filing her disability application on October 20, 1959, plaintiff had been unable to engage in any substantial gainful activity, by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

The medical history of the plaintiff in this case dates back to 1936, when she testified she had the first attack with her colon. Her condition has progressively worsened since that time, and on May 6, 1957, she finally had to terminate her employment as a weaver in a textile mill, which type of work she had engaged in since she was sixteen years old. Before she finally quit work it had been necessary for her to be out from work frequently on account of her health.

Her personal treating physicians say that she is permanently disabled to engage in any substantial gainful activity by reason of medically determinable physical impairments (namely, chronic ulcerated colon, enlarged heart and hypertension) which can be expected to result in death or to be of long-continued and indefinite duration. There is nothing in the record to counter the weight of these expert judgments to a finding of disability. While it cannot be considered as conclusive on the issue of plaintiff's ability to engage in substantial gainful activity, it does, reflect the treating physicians' opinions of the severity of plaintiff's impairments, the degree of their development, and the plaintiff's physical and mental capacity to resist or adapt to them.

The doctors who have examined the plaintiff have all diagnosed the ulcerated colon, cardiac condition and hypertension, they differ only as to the severity of the diseases and their effect upon the plaintiff.

Mrs. Caldwell testified that she suffers with her heart, her colon (that since 1957, she has had no control of her bowels), her head, chest and all over her body; that she has milk leg; that she has shortness of breath upon the slightest exertion and at times when she is sitting; that she is weak; that she sleeps on two pillows; that she is more comfortable sitting than lying; that she takes medicines daily for colitis, heart and high blood pressure and is on a special diet; she has swelling of the feet and legs; that she is unable to do any of her housework; that her doctor told

her that her heart is enlarged and that her chest is infected with bronchitis and her colon is infected, and that there is no cure for the colon and that her heart showed no improvement but in fact was worse in its functioning; that he did not give her any hope that her condition would ever be any better; that she could never do any type of gainful work.

Mrs. Caldwell was born June 10, 1907, and completed the fifth grade in school.

The husband of the plaintiff corroborated the testimony of his wife as to his wife's physical condition and her inability to do any kind of work. He works in a mill and sells eggs and supports his wife.

On February 9, 1961, plaintiff's family physician, Dr. Meakin, again examined the plaintiff and says in his report: "This patient presents a history of chronic ulcerative colitis for approximately 24 years. She now shows extensive x-ray and sigmoidoscopic evidence of this disease. In addition her heart is enlarged and seems to be slightly larger than it was when we saw her in 1958 and she has symptoms of decreased cardiac reserve. At that time the question of amyloid disease was raised and I again feel that this may well be the explanation for her cardiac enlargement and now hepatic enlargement with evidence of disordered liver function as shown by an abnormal BSP retention.

"Impression: 1. Chronic ulcerative colitis. 2. Cardiomegaly with history of tachycardia, decreased cardiac reserve, Class III, etilogical factor of cardiomegaly undetermined, may be the result of long standing hypertensive vascular disease, although the patient's blood pressure is not particularly high at this time and was normal at 120/80 in 1950.

"Accordingly, we suspect that there is a relationship between the ulcerative colitis and the cardiac and liver enlargement and in view of the infrequent occurrence of secondary amyloidosis in chronic ulcerative colitis, this would appear to be a reasonable possibility.

"Disposition: The patient is to continue on a bland diet, has been restarted on Azulfidine, 1 gram q.i.d. for her colitis; advised to continue the Digitalis in the form of Gitaligin, 1 tablet a day except Sundays and was put on Potassium Triplex to try and replace the potassium loss. It is my opinion upon re-examining this patient at this time that her physical condition has worsened some during the last two and a half years and that she should be considered as disabled."

■ The statute, 42 U.S.C.A. § 416 (i), defines "disability" as an "Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." While it casts upon the claimant the burden of proving that such a disability exists, it is not expected that this burden shall be carried to a point beyond a reasonable doubt. Ollis v. Ribicoff, 208 F.Supp. 644 (W.D.N.C. 1962). There really are two steps to a finding of disability: first, a finding of a "medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration" and, second, a finding that the impairment in fact causes an inability to "engage in any substantial gainful activity * * *." Butler v. Flemming, 288 F.2d 591, 593 (5th Cir. 1961). But in regard to the second step, the abstract "average" man is not the criterion. The inquiry must be directed to the particular claimant; not to people in general or even claimants in general. Pearman v. Ribicoff, 307 F.2d 573 (4th Cir. 1962). See, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

■ The phrases "inability to perform any substantial gainful activity" and "total disability" are not synonymous. In the case of Aaron v. Fleming, D.C.Ala., 168 F.Supp. 291, Judge Rives, Judge of the Fifth Circuit, sitting in the District Court, said, "It is further apparent that the referee gave too strict an application to 'disability.' Even though the Act is worded in strong language and the Congressional history in-

dicates a strict policy of application, to conclude in this case that the plaintiff is not 'disabled' within the meaning of the Act would make 'disability' commensurate with 'helplessness', 'bed-ridden', or 'at death's door'. No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perform 'any substantial gainful activity'. I do not interpret the Act to apply only to the totally helpless and bed-ridden nor to those at death's door."

■■■■■ Certainly it is not necessary that she, or any other claimant, be bed-ridden to come within the statute's provisions. Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960), nor "by the use of a catalogue of the nation's industrial occupations * * * go down the list and verbally negative (her) capacity for each of them or their availability to (her) as an actual opportunity for employment." Butler v. Flemming, supra; Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Where the statute refers to "any substantial gainful activity" the word "any" must be read in light of what is reasonable and not of what is merely conceivable. Klimaszewski v. Flemming, 176 F. Supp. 927, 931–932 (E.D.Pa.1959).

"It is the duty of the Secretary to protect the public funds from malingerers; but where, as here, the possibilities of obtaining employment are practically nil, it is no answer that the claimant may be theoretically capable of performing some one of the 'non-physical, observational' jobs contained in an exhaustive list covering places and circumstances utterly irrelevant to her situation. Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant." Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

My review of the entire record convinces me that the plaintiff's earning capacity and capabilities in engaging in any substantial gainful activity are negligible if not non-existent.

■■■■ After a careful examination of the record in this case and the foregoing authorities, I am of the opinion that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous. On the contrary, the conclusion that plaintiff is unable to engage in any substantial gainful activity appears self-evident to me. Plaintiff in this case is the victim of medically determinable physical impairments of serious and substantial proportions which can only be expected to result in death or to be of long-continued and indefinite duration. As a direct result of her combined impairments plaintiff has been unable since May 6, 1957, to follow her lifelong employment in a textile mill after being compelled to terminate same despite her willingness and desire to continue working. Plaintiff's combined physical impairments, when considered in connection with her individual circumstances of age, work experience, education, training and skill, serve to eliminate effectively, any reasonable possibility of suitable employment or employment for which plaintiff is qualified.

Under the foregoing authorities, I must conclude that the findings of the Secretary as to the establishment of a period of disability and disability insurance benefits are not supported by substantial evidence on the record considered as a whole and under the authority for appeal given by 42 U.S.C.A. § 405(g) the conclusion of the Secretary that the claimant was not entitled to the period of disability and the disability insurance benefits was clearly erroneous, was incorrect, and must, therefore, be reversed.

It is, therefore, ordered, that the decision of the Secretary in this case be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.