**Kitty MANN, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**No. 70 Civ. 2217.**

United States District Court, S. D. New York.

Feb. 18, 1971.

Meltzer & Fishman, New York City, for plaintiff; Stanley F. Meltzer, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; John F. McHugh, Asst. U. S. Atty., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

These are cross-motions for summary judgment in an action brought by the plaintiff pursuant to section 205(g) of the Social Security Act[1] to review a final determination of the defendant, the Secretary of Health, Education and Welfare (hereafter the "Secretary") denying plaintiff's application for disability insurance benefits.

In October 1968, plaintiff filed an application for disability insurance and for the establishment of a period of disability, alleging that she became disabled to work in March 1961 at age 45, which continued to March 31, 1966, the date when she last met the earnings requirement for disability purposes. Her initial application was denied; upon reconsideration by the Bureau of Disability Insurance of the Social Security Administration and an evaluation of the evidence by a physician and a disability examiner, the denial was adhered to. Thereafter, in January 1970, the matter was considered de novo by a hearing examiner before whom plaintiff, represented by her present attorney, appeared and testified. On March 5, 1970, the hearing examiner rendered his decision denying plaintiff's application, which was upheld upon review by the Appeals Council, and so became the final decision of the Secretary.

Plaintiff's ailments and their respective symptoms existed both before and after March 31, 1966, the date when her special insurance status expired. Thus, plaintiff had the burden of proving that her impairments, either singly or in combination, resulted in disability as defined by the statute, which lasted or was expected to last for a continuous period of twelve months on or prior to March 31, 1966.[2]

The government on this motion contends that plaintiff's ailments subsequent to March 31, 1966, cannot be considered on the issue; however, the court is of the view that if the subsequent impairments, which may have been latent, can be related back so that in combination or totality with prior ailments they causally resulted in disability, they may properly be considered—in sum, that plaintiff's total medical condition and history must be considered in deciding whether she sustained her burden of proof. Thus viewed, the issue on this motion is whether, upon the entire record, the finding by the hearing examiner that plaintiff failed to establish that "at any time from March 1961 to April 1, 1966, she had an impairment or combination of impairments, which was of such severity as to prevent her from engaging in any substantial gainful activity and which had lasted a continuous period of at least 12 months or was expected to last such period or to end in death" is supported by substantial evidence. Upon a "searching investiga-

---

1. 42 U.S.C. § 405(g).

2. 42 U.S.C. § 423 in part reads:

"(d) (1) The term 'disability' means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

* * * * *

(2) For purposes of paragraph (1) (A)—

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy * * *."

tion"[3] of this entire record, the court concludes that the finding is so supported and thus is conclusive under the standards of review prescribed under the Act.[4] Moreover, it is clear that the examiner, in making his finding, took into account and carefully considered plaintiff's entire medical history.

## I

The period up to March 31, 1966.

Plaintiff was born in 1916; she had a high school education, following which she attended business school for one year. After graduation she worked at various times as a file clerk, bookkeeper, typist and switchboard operator. She was married in 1936 and worked thereafter, but stopped intermittently in 1937, 1940 and 1943, during pregnancies for the delivery of her three children. Soon after her marriage she worked as an office assistant (answering the telephone, etc.) and in her husband's limousine service business. In 1953–54 she was employed as an operator of a "Recordak" machine, and from late 1954 to the first quarter of 1961 she was employed by the Accurate Millinery Co., Inc. as a stenographer-typist and switchboard operator. She testified that she quit this job because she "lost her voice" and because her stomach was distended, a condition which caused her embarrassment in public.

Plaintiff's medical problem appears to have had its onset in 1961, when she developed polyps on her vocal chords, for which she received treatment from her doctor. However, these were not removed surgically until 1965. Her recovery was uneventful and her voice was improved. Also, in 1961 and 1962 she was treated by a gynecologist about every six months for a swelling of her lower abdomen, and in May 1963, a hysterectomy was performed for the removal of a fibroid uterus. Post-operative

examination in June 1963 revealed the wound well healed, and upon another examination in January 1964 it was essentially negative. The plaintiff testified that the reason for the delay in the surgical procedures for the removal of the polyps and the fibrosis was her fear that they might have been cancerous. In 1965 and 1966 she was treated about every two or three months for a chronic kidney condition, and within that period she had a vaginal irritation, for which a doctor prescribed the application of an ointment.

At the hearing a statement was submitted by a doctor that he had treated plaintiff during the years 1965 and 1966 for hypertension and pyelonephritis, but without specification of any particular dates. However, after the hearing a further statement was submitted by the doctor which specified the dates of treatment in 1964 and 1965. Plaintiff testified that from 1963 to 1967 there was not a single day that she was free from complaints due to one of her ailments; also that she was subject to fainting spells frequently.

## II

The period after March 31, 1966.

During this period plaintiff had additional ailments and impairments. In November 1967, a left radical mastectomy for carcinoma of breast was performed. After nine days' hospitalization she was discharged as in "general good condition." In December 1967, she was rehospitalized for a small pulmonary embolus and was discharged twelve days later, when her condition was noted as improved. She was hospitalized again from January 11, 1968 to March 14, 1968 for conditions diagnosed as left lower ureteral calculus; status post left mastectomy; pulmonary emboli; acute tubular necrosis and wound infection. Surgery was performed with bilateral

---

3. *Cf.* Flack v. Cohen, 413 F.2d 278, 280 (4th Cir. 1969); Miracle v. Celebrezze, 351 F.2d 361, 383 (6th Cir. 1965).

4. 42 U.S.C. § 405(g). Rinaldi v. Ribicoff, 305 F.2d 548, 549, 550 (2d Cir. 1962); Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960); *cf.* Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960).

vein ligation. She had a dropped left foot and ulcers of both heels, and, because of weakness of her lower left extremity, was wheel chair bound commencing in February 1968, which continued for about a year. When she was discharged on March 14, 1968, her condition was described as fair.

■ Plaintiff, other than the submission of the doctors' and hospital records, offered no additional medical evidence to support her claim. While it may be that a latent condition of the post-March 1966 ailments, to the extent they may have existed, if at all, prior thereto, coupled with her then known ailments, in combination may have resulted in disability, no such evidence was offered. The post-March 1966 hospital and doctors' reports in no way suggest that any of her diagnosed conditions existed or had their origin in the pre-March 31, 1966 period. Indeed, upon the conclusion of the hearing her attorney requested and was granted a continuance to offer the testimony of two physicians who had treated plaintiff. However, the opportunity to present medical testimony which might have been of significance on the vital issue was not availed of.[5] Instead, statements of the two doctors were submitted which, except for the change of dates by one already noted above, added nothing to the record. That plaintiff was periodically ill due to one cause or another, or the mere presence of disease or medically determinable impairment would not, without more, entitle her to disability benefits. It must also be established that the impairment was of such severity that it resulted in "inability to engage in any substantial gainful activity" and that the

inability existed "by reason of" the impairment.[6]

■ The proof indicated that within the period from 1961, when plaintiff stopped working, to March 1966, plaintiff received unemployment insurance benefits for twenty-four weeks and reported weekly that she was capable of employment and was ready and willing to take a job. Also within that period, she applied for a job on one occasion, which she did not accept, but thereafter she did not seek any other job nor did she look in the newspapers to see if job opportunities were available. These were factors bearing on the question of whether plaintiff had sustained her burden of proof.[7] So, too, her activity in her husband's business was a factor to be considered. During the years 1964–66 she worked in her husband's limousine service business, which employed eight chauffeurs. She acted as bookkeeper, prepared customers' bills and answered the telephone. She went to the office three times a week and worked on the average of twenty hours a week, but received no salary. She and her husband testified that while she travelled to his place of business by bus, she was driven home either by an employee or her son, who also worked for her husband. The latter testified he would not have hired her as a paid employee. However, the evaluation of their testimony, particularly as to the nature and extent of her services for her husband and her ability to perform such services, was for the hearing examiner, and he was not bound to accept at face value their testimony either on that aspect or that she was unable to engage in sub-

5. *Compare* Adams v. Flemming, 276 F.2d 901, 903–904 (2d Cir. 1960) *with* Ber v. Celebrezze, 332 F.2d 293, 300 (2d Cir. 1964).

6. *See* Adams v. Flemming, 276 F.2d 901, 904 (2d Cir. 1960); *see also* Gotshaw v. Ribicoff, 307 F.2d 840, 844–845 (4th Cir. 1962), cert. denied sub nom. Heath v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); Pollak v. Ribicoff, 300 F.2d 674, 677 (2d Cir. 1962); Graham v. Ribicoff, 295 F.2d 391, 394 (9th Cir. 1961).

7. *See, e. g.,* Dupkunis v. Celebrezze, 323 F.2d 380, 381 n. 1 (3d Cir. 1963); Gotshaw v. Ribicoff, 307 F.2d 840, 845 (4th Cir. 1962); Adams v. Flemming, 276 F.2d 901, 904 n. 3 (2d Cir. 1960); Wareheim v. Ribicoff, 194 F.Supp. 533, 535 (D.C.Md.1961).

stantial gainful employment of the type she previously performed.[8]

■■ Plaintiff charges that prejudicial error taints the finding of the examiner because of failure to obtain the opinion of a vocational analyst as to the extent of plaintiff's impairment, and as to what she could do and what employment opportunities were realistically available to her under the so-called *Kerner* rule.[9] But expert opinion is not required in every situation,[10] and indeed whatever weight attaches to an expert's opinion, the ultimate fact issue is for administrative determination.[11] It must be recognized, as our Court of Appeals has, that "[a] chief value of the administrative procedure is the expertise of the examiners and the range of evidence which is permitted to be introduced unhampered by technical rules of evidence."[12] Here the facts were clear; the hearing examiner having decided that plaintiff had failed to establish her alleged disability, there was no need for an expert to testify as to what plaintiff could do or what employment opportunities were available to her.[13] Implicit in his finding is that she was capable of and did engage in her normal work activity. In sum, the finding that within the period in question plaintiff "has not established that she could not, except for temporary periods of less than 12 continuous months' duration, have engaged in her usual type of occupation" finds full support in the record.

Accordingly, defendant's motion for summary judgment is granted; plaintiff's cross-motion is denied.

8. Dyer v. MacDougall, 201 F.2d 265, 268–269 (2d Cir. 1952) ; *cf.* Labee v. Cohen, 408 F.2d 998, 1000 (5th Cir. 1969).

9. Kerner v. Flemming, 283 F.2d 916 (2d Cir. 1960).

10. *Cf.* Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed. 2d 313 (1962).

11. *Cf.* Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

12. Rinaldi v. Ribicoff, 305 F.2d 548, 550 (2d Cir. 1962).

13. *Cf.* Laws v. Celebrezze, 368 F.2d 640, 645 (4th Cir. 1966) ; Smith v. Gardner, 361 F.2d 822, 823 (6th Cir. 1966) ; Dupkunis v. Celebrezze, 323 F.2d 380, 381–382 (3d Cir. 1963) ; Bradey v. Ribicoff, 298 F.2d 855, 858 (4th Cir.), cert. denied, 370 U.S. 951, 82 S.Ct. 1601, 8 L.Ed.2d 817 (1962).