**Irving I. ZIMBALIST, Plaintiff,**

v.

**Elliot RICHARDSON, as Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**No. 70–C–821.**

United States District Court,
E. D. New York.

Oct. 26, 1971.

Joseph Guberman, Jamaica, N. Y., for plaintiff.

Robert A. Morse, U. S. Atty., Eastern District of New York, Lloyd H. Baker, Asst. U. S. Atty, Brooklyn, N. Y., of counsel, for the United States.

Memorandum of Decision and Order

MISHLER, District Judge.

This is an action brought pursuant to § 205(g) of the Social Security Act (42 U.S.C. § 405(g)) to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for a period of disability and disability benefits. Plaintiff moved for summary judgment directing the Secretary to pay disability insurance benefits from March 6, 1969.

Plaintiff filed an application for a period of disability and disability insurance benefits [1] on December 28, 1964. In that application, he claimed that he was disabled because of mental illness as of January, 1964. The application disclosed that plaintiff was born on May 31, 1921 and had been employed by the Board of Education of the City of New York for 14 years as an industrial arts teacher. The application was granted and disability insurance benefits were paid to August 31, 1966 on a finding that he had been engaged in a substantial gainful activity since June 9, 1966.[2]

On April 13, 1967, plaintiff's wife, Janet Zimbalist, applied for disability insurance benefits on behalf of plaintiff. The application disclosed that plaintiff's employment terminated in March, 1967, and that he was confined to a hospital for treatment of a mental illness. The disability interview report indicated that plaintiff was confined to a Veterans Administration hospital for a recurrent condition described in the report as "maniac [sic] depressive" and from which it appears that plaintiff experienced abnormal episodes of depression and elation. On May 5, 1967, the Bureau of Disability Insurance of the Social Security Administration determined that plaintiff was disabled as of March 27, 1967 and payments resumed as of that date. Again, based on a voluntary report of the plaintiff in June, 1968 to the Bureau indicating that plaintiff was engaged in substantial gainful activity, payments ceased on August 31, 1968.[3]

Plaintiff filed an application for a period of disability and for disability benefits on April 9, 1969. His application discloses that on the date of the application he was "confined" to a hospital for treatment of a mental illness but "allowed to go home at night because of the shortage of help at hospital." The application states that plaintiff was employed

---

1. Section 223 of the Act (42 U.S.C.A. § 423) defines disability as follows:

"(d) (1) The term "disability" means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *
(2) For purposes of paragraph (1) (A)—
(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

2. The finding was supported by a report made by plaintiff to the Bureau of Disability Insurance of the Social Security Administration indicating that he had been employed as an assembly worker on a full time basis at $80.00 per week.

3. The cessation of disability was based on a showing that plaintiff had a full time job of 40 hours a week. He earned $100.00 per week. The Bureau's report indicates that the employer is not aware of plaintiff's mental illness and that plaintiff expressed doubt as to his ability to work 40 hours a week.

by Hermes Engravers from June 20, 1968 to March 6, 1969. It fixes the date disability commenced as March 6, 1969.

The Decision of Evaluation and Authorization of the Bureau of Disability Insurance denied the application on June 12, 1969. Mrs. Zimbalist requested reconsideration. On reconsideration, the previous determination of denial was upheld.[4] Mrs. Zimbalist requested a hearing. A hearing was held on January 23, 1970.

Mrs. Zimbalist testified that at the time plaintiff advised the Bureau of his ability to engage in substantial activity in June, 1968, he was employed at Hermes Engravers at $100 per week. He left the employ of Hermes Engravers on March 6, 1969. He was hospitalized from March 12, 1969 to April 17, 1969 at the Veterans Administration Hospital. Dr. Richard G. Singer, Chief Psychiatrist of the Veterans Administration Hospital wrote, in the hospital report discharging plaintiff on April 17, 1969:

> This 100% service connected veteran was last discharged 8/67. Since that time the patient returned to his home where he was gainfully employed. He functioned very well and was maintained on a PHC program. One week prior to admission the patient became markedly tense and depressed. He felt unable to sleep and unable to communicate. He decided to seek admission. On admission, the physical, neurological and laboratory examinations were essentially within normal limits, with the exception of his periodontitis. The patient was treated with Thorazine to which he very favorably responded. At no time was the patient's behavior devious and his depression quickly lifted. He adjusted satisfactorily to

week end passes and was able to spend a great deal of time at home. At the time of his discharge, the patient was regarded as being incompetent to handle VA funds. This was the consequence of behavior in the past in which the patient injudiciously handled his money. It is recommended that this incompetence be continued. At the time of his discharge, the patient was given a one week supply of Thorazine. There is significant impairment in this case but the likelihood is that the patient is able to hold down a job. There is strong possibility that he may decompensate again in the future and require hospitalization. His impairment in the social area is regarded as being minimal. The patient was discharged on PHC in order that he could be followed and his first appointment will be 5/14/69.

He was again admitted to the Veterans Administration Hospital on June 18, 1969. Dr. Singer's report states:

> This is the 5th NP admission of a 48 year old, service connected veteran, who complained that for several weeks prior to admission, he became deeply depressed, unable to concentrate, and was unable to get up and attend work shop. Patient felt completely out of control and requested that he be admitted. Physical, neurological and laboratory examinations were unremarkable, with the exception of periodontitis of his teeth, and a scar on his abdomen, the result of a subtotal gastrectomy in 1967. In the hospital, the patient was treated with Ellavil and Thorazine, to which he quickly and favorably responded. Patient adjusted to gate passes and began to sleep at home. His depressive symptoms grad-

---

4. The letter denying benefits dated October 15, 1969 states:

   The evidence reveals that your husband was admitted to the hospital in June 1969 because of depression, unable to concentrate and was unable to get up and attend workshop. He was treated and his depressive symptoms gradually disappeared and in July 1969, he was considered able to resume prehospital activities. It was also felt that he could attempt some employment.

   Since your husband's condition has responded well to treatment, it has been determined that he will be able to resume work activity before 12 months have passed or before March 1970. The denial of his claim remains unchanged."

ually disappeared and the patient was capable of resuming his pre-hospital activities. At the time of his dis- charge, the patient was regarded as being medically incompetent. He has a history of injudiciously using funds. The patient was discharged on PHC in order that his condition be followed. At the time of his discharge, it was felt that the patient could attempt some employment. His capacity to work is somewhat speculative and can- not be determined until the patient is actually tried in a work situation. He will be seen for follow up care. First appointment 8/1/69.

On August 28, 1969, he obtained em- ployment as a shipping clerk at Knoll In- ternational at $100 per week. The em- ployer manufactured office furniture.

He again entered the hospital on Fri- day, October 31, 1969, and was dis- charged on Tuesday, November 4, 1969. He returned to work on November 5, 1969. He told his employer he was ill with the flu. He was continuously em- ployed to the date of the hearing at Knoll International.[5]

The Hearing Examiner of the Bureau of Hearings and Appeals of the Social Security Administration found that,

"Since March 6, 1969 the claimant has not been suffering from a medi- cally determinable impairment or im- pairments of such severity as to have prevented him from engaging in any substantial gainful activity and which has lasted or may be expected to last for a continuous period of not less than 12 months."

On request for review, the Appeals Council accepted additional evidence covering hospitalization at a Veterans Administration Hospital from October

31, 1969 to November 14, 1969 and from March 4, 1970 to March 19, 1970. On March 15, 1970, the Appeals Council adopted the Hearing Examiner's deter- mination and the denial became the final decision of the Secretary.

■ Section 223(d) (5) of the Act (42 U.S.C.A. § 423(d) (5)) states:

"An individual shall not be considered to be under a disability unless he fur- nishes such medical and other evidence of the existence thereof as the Secre- tary may require."

The claimant has the burden of showing that he is entitled to the benefits claim- ed. Reyes Robles v. Finch, 409 F.2d 84 (1st Cir. 1969). The burden has been characterized as the ". . . ultimate burden of persuasion." Franklin v. Sec- retary of Health, Education and Wel- fare, 393 F.2d 640 (2d Cir. 1968). That burden includes proof that the disability existed on or prior to the date that the claimant had insured status. Dixon v. Gardner, 406 F.2d 1035 (4th Cir. 1969); Mann v. Richardson, 323 F.Supp. 175 (S.D.N.Y.1971). In determining wheth- er the disability existed prior to the date that the claimant's special insurance sta- tus expired, proof of the claimant's phys- ical and mental condition subsequent to that date is relevant. Carnevale v. Gard- ner, 393 F.2d 889, 890, (2d Cir. 1968); Mann v. Richardson, *supra*, 323 F.Supp. at page 177.

Section 205(g) of the Act [42 U.S.C. § 405(g)] expressly limits the jurisdic- tion of the District Court in reviewing the final determination of the Secretary to determining whether the findings of fact are "supported by substantial evi- dence".[6]

The questions to be determined in this action are whether the plaintiff sustain-

---

5. The hospital report submitted to the Appeals Council after the hearing con- cerning plaintiff's hospitalization from 3/4/70 to 3/19/70, indicates that the plaintiff on March 9, 1970 told Dr. Singer,
   "(1) he quit his job
   (2) he will get 50/wk [sic] for 26 wks disability.

    (3) he feels well enough for a week- end but not well enough to sleep home starting Wed."

6. The language, in part, of Section 205 of the Act is:
   "The findings of the Secretary as to any fact, if supported by substantial evi- dence, shall be conclusive, . . . ."

ed his burden of showing that he came within the class of persons contemplated by the statute [42 U.S.C. § 423(c)], and whether there is ". . . any substantial basis for the Agency's determination that the [claimant] was not entitled to the claimed disability benefits". Adams v. Flemming, 276 F.2d 901, 903 (2d Cir. 1960).

The court may not try the case *de novo* and substitute its findings for those of the Secretary, Flack v. Cohen, 413 F.2d 278 (4th Cir. 1969), but is limited to ". . . determining whether the Secretary's findings as to relevant facts are supported by substantial evidence. 42 U.S.C. § 423(g)". Franklin v. Secretary of Health, Education and Welfare, *supra*, 393 F.2d at page 642. *See also* De Nafo v. Finch, 436 F.2d 737 (3d Cir. 1971).

The court's function in an action under § 205(g) is to ". . . closely scrutinize the administrative proceedings to insure a result consistent with congressional intent and elemental fairness". Flack v. Cohen, *supra*, 413 F.2d at page 280.

First of all, it is clear that a determination by the Veterans Administration that claimant is totally disabled is not binding on the Secretary or this court. Such a finding is entitled to some weight and should be considered by the Secretary, but it is not conclusive. The same is true as to determinations of disability by state agencies and insurance companies, who operate under different standards and policies. See the numerous annotations in notes 142–44, 42 U.S. C.A. § 423 and 20 C.F.R. § 404.1525.

The Secretary concedes that "plaintiff has proved that he is suffering from a medically determinable impairment and that such impairment is of long standing duration," and that "during periods in plaintiff's life, this impairment can be characterized as extremely severe." The court finds that it must agree with the further assertions that "it is quite clear from the evidence of record that plaintiff's mental disorder is subject to periods of remission and that during such periods he has voluntarily returned to work activity. Further, the record does not establish any correlation between plaintiff's work activity and the exacerbation of his mental disorder. On the contrary, reports from the Veterans Administration Hospital in April and July of 1969 clearly indicate that employment is not contraindicated." (Defendant's brief, p. 7.)

"Substantial gainful activity" means the performance of substantial services with reasonable regularity in some competitive employment. It relates to the range of activities the individual can perform. Complete helplessness is not necessary to a finding of an allowable disability. Sporadic or infrequent activity would not necessarily establish ability to engage in substantial gainful activity.

The court finds that the plaintiff had engaged in substantial gainful employment before the period in question, and that there was a reasonable likelihood that he would be able to do so again within the 12 month period. At the time he was discharged from the hospital on April 17, 1969, the Chief Psychiatrist thought that there was a likelihood that Zimbalist would be able to hold down a job. After the hospitalization in June, the doctor stated that his capacity to work was "somewhat speculative," but indicated that it should be attempted. The plaintiff did in fact subsequently obtain regular employment. He earned far in excess of the $140.00 per month which the Regulations deem sufficient to demonstrate ability to engage in substantial gainful activity. 20 C.F.R. § 404.1535 (b).

By the time of the hearing in January, claimant had been employed continuously for five months, earning approximately $2,100.00. It does not appear that he was given sheltered employment for any sort of therapeutic purposes. His job as a shipping and packing clerk involved vigorous activity, and it does not seem that his employer even knew of his

**1356**

condition—when he went into the hospital and missed two days of work in November, he told his employer that he had been ill with the flu.

■ The court is unable to conclude that claimant did not have the potential to engage in substantial gainful activity, and subsequent events confirm that conclusion. The Secretary's findings of fact are supported by "substantial evidence," and there was a "substantial basis for the Agency's determination that the claimant was not entitled to the claimed disability benefits."

Plaintiff's motion for summary judgment directing the Secretary to pay disability insurance benefits from March 6, 1969 is denied. Summary judgment is granted in favor of defendant.