375 F.Supp. 641 (1974)
Emil C. TIMMERMAN, Plaintiff,
v.
Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.
No. 73 C 790 (A).
United States District Court, E. D. Missouri, E. D.
May 7, 1974.
Harry J. Nichols, St. Louis, Mo., for plaintiff.
Donald J. Stohr, U. S. Atty., J. Patrick Glynn, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
This is a proceeding under Title II of the Social Security Act, as amended, 42 U.S.C. § 405(g), for judicial review of a final decision of the Secretary of Health, Education and Welfare. This matter is before the Court on motions for summary judgment filed by both plaintiff and defendant with supporting briefs.
On June 19, 1972, plaintiff filed his application (Tr. 84-87) to establish a period of disability, as provided in 42 U.S.C. § 416(i), and to obtain disability insurance benefits, as provided in 42 U. S.C. § 423. The application received consideration and reconsideration by the *642 Social Security Administration (Tr. 88-89, 91-92) and the claim was denied.
On March 28, 1973, at plaintiff's request, a hearing was held, at which he appeared and testified (Tr. 25-83). On July 10, 1973, the administrative law judge rendered a decision unfavorable to plaintiff (Tr. 9-20). The plaintiff then requested the Appeals Council to review the decision of the hearing examiner. The Appeals Council, after receiving additional evidence, affirmed the decision of the administrative law judge (Tr. 4). Thus, the decision of the administrative law judge became the final decision of the Secretary of Health, Education and Welfare. The plaintiff timely filed for judicial review on November 27, 1973. The Secretary of Health, Education and Welfare filed a transcript of the record of the proceeding with his answer to the complaint.
In the plaintiff's application for disability benefits, the decision of the administrative law judge stands as the final decision of the Secretary. The findings issued by the administrative law judge (Tr. 18-20) were:
"1. Claimant last meets the special earnings requirements for disability purposes on December 31, 1972.
"2. This claimant was only temporarily disabled during his hospitalization for cervical spine fusion and the normal recovery period thereafter and the disability did not last for 12 continuous months.
"3. On and prior to December 31, 1972, claimant had no residuals of the cervical spine fusion of such severity as to preclude him from working. Claimant had full range of motion of the neck with only minimal tenderness.
"4. On and prior to December 31, 1972, claimant had only minimal weakness of both hands. The functional limitations imposed by this weakness were minor.
"5. On and prior to December 31, 1972, claimant's lumbosacral sprain did not result in limitation of motion, joint deformity or other complications of such severity as to preclude certain types of substantial gainful activity. Claimant's arthritis is not severe in nature.
"6. The medical evidence does not establish a severe heart impairment.
"7. Claimant would not be precluded by pain from working.
"8. On and prior to December 31, 1972, claimant retained the physical capacity to perform those light or sedentary jobs suggested in the testimony of the vocational expert witness. Such jobs exist in the national economy. They exist in significant numbers in the region where claimant lives.
"9. Claimant is not under a disability in that he was unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death or which have lasted or can be expected to last for a continuous period of not less than 12 months, at any time when he met the special earnings requirements."
42 U.S.C. § 405(g) provides that the District Court may, upon the pleadings and transcript of the record, enter judgment affirming, reversing or modifying the final decision of the Secretary. This section in part provides: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." Substantial evidence is defined in Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963), l. c. 501: "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole."
*643 "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."
In 42 U.S.C. § 423(d)(5), the Act places the burden of proving the disability upon the plaintiff as follows: "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." Furthermore, an individual claiming entitlement to disability benefits under the Act must establish that he became "disabled" prior to the expiration of his insured status, which in this case is December 31, 1972. Kirkland v. Weinberger, 480 F.2d 46 (5th Cir. 1973), cert. den'd, Johnson v. Finch, 437 F.2d 1321 (10th Cir. 1971); Vineyard v. Gardner, 376 F.2d 1012 (8th Cir. 1967). A disability which has its onset after December 31, 1972, cannot be the basis for a favorable finding of disability under the Act. Vineyard v. Gardner, supra; Adams v. Gardner, 300 F. Supp. 616 (W.D.Mo.1969).
The only issue before the Court is whether there is substantial evidence to support the Secretary's decision that plaintiff failed to prove that he was under a disability as contemplated by the Act on or before December 31, 1972 (see definition, supra). According to 42 U. S.C. § 405(g), the Secretary's decision is conclusive upon the Court if supported by substantial evidence. Cody v. Ribicoff, 289 F.2d 394 (8th Cir. 1961); Celebrezze v. Bolas, supra.
An examination of the transcript of the proceedings and exhibits before the hearing examiner and the Appeals Council discloses the plaintiff's application for disability benefits is predicated upon his inability to work due to nerve compression in the neck, heart trouble, and partial paralysis in the hands and arms (Tr. 84).
Plaintiff testified at his hearing on March 28, 1973, that he has an eighth grade education with vocational experience mainly in the printing industry as a press feeder and paper handler, and about twelve years experience as a farmer. Plaintiff also had training in teletype maintenance and worked on such machines while in the service between 1945 and 1947 (Tr. 30-31). Plaintiff's most recent employment was as a paper handler for Universal Printing Company in St. Louis, Missouri, where he was employed from March of 1969 to May of 1970. Plaintiff has not worked since that time (Tr. 33). Plaintiff further testified that he is in pain at all times and that the pain is unbearable if he strains himself (Tr. 38), but he is able to drive and to walk through the woods (Tr. 42). Plaintiff is also able to fix his own lunch while his wife works and is able to wash dishes, sweep and clean house a little (Tr. 43), but feels that he is not able to work at any job that he is qualified to do (Tr. 45). Plaintiff passes his time by reading (Tr. 43).
Plaintiff's medical history in evidence in pertinent part is as follows: Plaintiff sprained his right shoulder in May of 1970, and was to return to work on June 22, 1970, but did not (Tr. 168-169). Plaintiff entered Lester E. Cox Medical Center, Springfield, Missouri, on July 14, 1970, for removal of a gallstone. There were no complications. Chest and shoulder X-rays and upper G.I. were normal. EKG revealed bradycardia with nonspecific S-T changes. The diagnosis was "probably normal EKG" (Tr. 116-117).
On September 17, 1970, D. L. Pittenger, D.O., diagnosed plaintiff's condition as "R. Sclenicus Anticus Syndrome", but no clinical or laboratory findings were included and no opinion as to disability was given (Tr. 170). Edward Lansche, M. D., reported on October 6, 1970, that plaintiff had a narrowing of the disk between C-5 and C-6, with localized spur formation to this level, but that plaintiff had a normal range of motion. There was no soft tissue *644 bone or joint change in his right shoulder girdle. Dr. Lansche also reported on October 20, 1970, that plaintiff had old healed minor compressions of T-11 and 12, and L-1 with anterior auto-fusion (Tr. 171-172).
On January 27, 1971, Gary L. Sattman, D.O., reported plaintiff had osteoarthritis but was able to work (Tr. 173). Plaintiff was examined by Dr. William E. Button, an osteopathic physician, on February 18, 1971. Dr. Button's diagnosis was cervical arthrosis of C-5 and 6 of the spine. At Dr. Button's recommendation plaintiff entered Normandy Osteopathic Hospital on March 29, 1971, and had an anterior cervical interbody fusion at C-5 and 6 on April 12, 1971, and was dismissed on April 27, 1971, after an uneventful postoperative recovery (Tr. 130-134). On May 11, 1971, Dr. Button took X-rays of plaintiff's spine which revealed satisfactory progress and plaintiff had no complaints at that time. On June 8, 1971, plaintiff complained to Dr. Button of lumbar pain and spasms and on July 15, 1971, plaintiff complained of numbness in the ring and little fingers of both hands and of pain in the cervical spine and his triceps reflex appeared weak bilaterally. On August 5, 1971, there was no change in plaintiff's condition, and Dr. Button recommended a myelographic examination, but plaintiff refused this examination (Tr. 130, 51-52).
Plaintiff entered Lester E. Cox Medical Center again on November 6, 1971, with complaints of chest and neck pain. The chest pain was not associated with exertion and lasted only momentarily (Tr. 136). Electrocardiograms on several occasions were all within normal limits and his physician, Dr. Mantell, doubted a cardiac origin to his chest pains (Tr. 136, 139). During his stay, plaintiff was seen by Dr. Whitlock, a neurologist, who was unable to find any neuro deficits (Tr. 136).
On February 22, 1972, plaintiff returned to Dr. Button with no change in his condition from his last examination by Dr. Button on August 5, 1971 (Tr. 130). At Dr. Button's recommendation plaintiff consulted Dr. Frederic M. Simowitz, a neurologist, on March 2, 1972, and Dr. Simonwitz felt there was subjective evidence of nerve route compression at C-8 and T-1 and that an exploratory operation would be appropriate (Tr. 149-151). Plaintiff refused such operation (Tr. 51).
Plaintiff was admitted to Washington County Memorial Hospital on July 7, 1972, complaining of chest pains. All tests, including an electrocardiogram, were normal, and the diagnosis was a previous fusion of 5 and 6 cervical vertebrae and degenerative changes in the lower thoracic and lumbar spine (Tr. 153). When discharged he was placed on medication for arthritis (Tr. 155).
On April 20, 1973, which is after plaintiff's insured status had expired, plaintiff was again examined by Dr. Simowitz. Plaintiff's chief complaints were neck pain and lower back pain, the latter having developed only recently. Dr. Simowitz' examination revealed plaintiff's strength was normal, except in the hands bilaterally. There was about three-fifths normal strength in the flexor digitorum profundus muscles on both sides, on the ulnar aspect. There was similar weakness in the abductors of the fifth fingers bilaterally. Sensory examination was normal. Plaintiff's gait was somewhat guarded and mildly stooped due to back pain; however, heel, toe and tandem walking were done well. There was full range of motion of the neck and no palpable spasm and minimal tenderness to palpation of the neck musculature. Examination of the back disclosed slight loss of the normal lumbar lordotic curve and minimal palpable spasm in the lumbosacral arm bilaterally. The straight leg raising test was 1-plus positive on both sides at about 30 degrees. Range of motion of the back was full (Tr. 161-163).
Dr. Simowitz also reported that plaintiff showed evidence of minimal weakness in both hands, corresponding to the radicular segments served by the C-8 and T-1 nerve roots. The exact etiology *645 of this was indeterminate at that time, but Dr. Simowitz felt it was undoubtedly due to some sort of compression of the nerve roots either by a herniated disc, postoperative scarring, or other abnormality. The functional limitations imposed by the weakness appeared minor at the time of the examination (Tr. 161-163).
John A. Behrens, a vocational expert (Tr. 156-157), testified at the hearing. He examined the record, was present at the hearing, and heard all the oral testimony (Tr. 60). One of the questions asked Mr. Behrens by the administrative law judge was, assuming that the plaintiff's impairments did not preclude light[1] or sedentary[2] work, whether there would then be jobs in the national economy that plaintiff could perform. Behrens testified that there were jobs in the national economy that a person with plaintiff's education, vocational experience and residual capabilities could perform (Tr. 65-67). It was Behrens' opinion that if the plaintiff could do light or sedentary work then he could perform work as an assembler of electrical equipment or appliances, a packer in the printing, candy or textile industry, a sales clerk in hardware, farm supplies or nursery business, a service station attendant dispensing gas and oil, or a custodian in a school or other public building. Behrens said these jobs exist in the national economy and in the metropolitan St. Louis area where plaintiff resides. Plaintiff would not need special training for this work, but could learn on the job (Tr. 64-68).
Plaintiff has alleged that he is unable to work due to nerve compression in his neck, heart trouble, and partial paralysis in his hands and arms, all of which cause him constant pain.
Relatively constant severe pain may give rise to a disability. Brandon v. Gardner, 377 F.2d 488 (4th Cir. 1967). Subjective symptoms of pain, however, must be evaluated with due consideration for credibility, motivation and medical evidence of impairment. Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971); Dvorak v. Celebrezze, 345 F.2d 894 (10th Cir. 1965). Furthermore, a decision adverse to a plaintiff does not mean that his alleged pain was overlooked. Celebrezze v. Bolas, supra. The fact that a person cannot work without some pain and discomfort does not satisfy the test of disability. Adams v. Flemming, 276 F.2d 901, 904 (2nd Cir. 1960); Adams v. Richardson, 336 F.Supp. 983 (D.Kan.1972); Coomes v. Ribicoff, 209 F.Supp. 670, 672 (D. Kan.1962). Rather, the impairment must cause "inability to engage in any substantial gainful activity." 42 U.S.C. §§ 416(i)(1) and 423(d); Easttam v. Secretary of HEW, 364 F.2d 509, 511 (8th Cir. 1966). "Asserted pain, in and of itself, is not necessarily disabling." Easttam v. Secretary, supra, l.c. 513.
If an individual has an impairment which precludes heavy work or work which requires certain kinds of physical exertion, but it is shown that he can engage in other light forms of substantial gainful activity, a "disability" within the meaning of the Act has not been established. Woods v. Finch, 428 F.2d 469 (3rd Cir. 1970); Minton v. Finch, 419 F.2d 1328 (9th Cir. 1969); Johnson v. Finch, 437 F.2d 1321 (10th Cir. 1971). In the instant case there is evidence in the record that plaintiff can engage in substantial gainful work and that this work not only exists in the national economy, but in sizable numbers *646 in the St. Louis area where plaintiff lives.
Although plaintiff had cervical spine fusion on April 12, 1971, the medical evidence in the record failed to establish that plaintiff has residuals of his cervical spine fusion or any other cervical spine abnormalities of such severity that he is unable to engage in any substantial gainful activity. Plaintiff was only "temporarily" disabled during the period of his hospitalization for the fusion and the period required for recovery; therefore, his disability did not last for twelve continuous months, as required by the Social Security Act. 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).
During plaintiff's hospitalization at the Lester E. Cox Medical Center he was seen in consultation by Dr. Whitlock, who was unable to find any nerve defects (Tr. 136). Dr. Simowitz indicated in March of 1972 that there were some subjective indications for surgery at the C-8 and T-1 vertebral levels (Tr. 149-151), but his most recent report dated April 23, 1972, contains no such recommendation (Tr. 161-163). Dr. Simowitz found minimal weakness in both hands and only minor functional limitations due to this weakness. The examination further showed no sensory deficits and a full range of motion in the neck (Tr. 161-163).
Plaintiff stated that he had a long history of minor back pain (Tr. 162). Dr. Button reported that on June 8, 1971, plaintiff complained to him of lumbar pain and spasm, and a lumbosacral corset was prescribed (Tr. 130). In March of 1972, plaintiff was examined by Dr. Simowitz and made no complaints with reference to his lumbosacral spine (Tr. 149-151, 161). The records of plaintiff's hospitalization in July of 1972 refer only to degenerative changes of the lower thoracic and lumbar spine (Tr. 153-155). In plaintiff's last examination, Dr. Simowitz found a full range of motion of the back (Tr. 162). Dr. Simowitz also reported a slight loss of the normal lordotic curve and minimal palpable spasm in the lumbosacral area, Dr. Simowitz felt that with conservative therapy plaintiff's condition would be short-lived (Tr. 163). The medical evidence fails to establish that plaintiff is disabled due to impairments of his neck, back, or loss of strength in his arms and hands.
There is no medical evidence to establish a heart impairment severe enough to prevent plaintiff from engaging in substantial gainful activity. Plaintiff takes no medication and receives no medical attention for his heart impairment, and hospital records indicate that his heart was within normal limits (Tr. 136-139, 153-154).
The mere fact that plaintiff has some arthritis, as mentioned in the medical evidence, is not sufficient to establish a disability within the meaning of the Act. Ferris v. Ribicoff, 205 F.Supp. 178 (S.D.W.Va.1962).
The burden of proving disability within the meaning of the Act is on the plaintiff, and this he has failed to do. The relevant evidence in the record as a whole is sufficient for a reasonable mind to accept it as adequate evidence to support a conclusion that plaintiff was able to perform light and sedentary work prior to December 31, 1972. Therefore, the Court finds that the Secretary's decision that plaintiff was not disabled on or before December 31, 1972, is supported by substantial evidence.
Accordingly, plaintiff's motion for a summary judgment is denied and defendant's motion for a summary judgment is sustained. The Clerk of the Court is directed to prepare and enter the proper order to that effect.
NOTES
[1] Light workwork where one is not restricted to a fixed position; it can be standing, sitting, or it can be a combination of standing, sitting or moving around. The weight requirements are 20 to 25 pounds where the individual consistently would lift or handle weight objects of no more than 25 pounds (Tr. 62-63).
[2] Sedentary workwork where one is basically in a fixed position, mainly sitting, where one only handles 10 pounds or under and physical demands are very limited in terms of what you do with weight and pressures as far as muscle requirements (Tr. 62).