402 F.Supp. 613 (1975)
Dorothy J. RUSSELL, Plaintiff,
v.
SECRETARY, DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Defendant.
No. S 75-9 C.
United States District Court, E. D. Missouri, E. D.
September 11, 1975.
*614 John W. Reid, II, Schnapp, Graham & Reid, Fredericktown, Mo., for plaintiff.
Melvin E. Horne, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, Senior District Judge.
This is a proceeding under Title II of the Social Security Act, as amended 42 U.S.C. § 405(g), for judicial review of a final decision of the Secretary of Health, Education and Welfare. This matter is before the Court on motions by both parties for summary judgment accompanied by supporting briefs.
On October 12, 1971, plaintiff filed her first application (Tr. 66-69) to establish a period of disability, as provided in 42 U.S.C. § 416(i), and to obtain disability insurance benefits, as provided in 42 U.S.C. § 423. In her first application, plaintiff alleged an onset date of October, 1969 (Tr. 66). The application received consideration and reconsideration by the Social Security Administration (Tr. 75-76, 78-79) and the claim was denied. Thereafter, on June 5, 1973, plaintiff filed a second application which alleged a later onset date of November 15, 1969 (Tr. 80-83). This second application also received consideration and reconsideration by the Social Security Administration (Tr. 87-88, 90) and that claim was similarly denied.
On October 18, 1974, at plaintiff's request, a hearing was held, at which she, her husband, sister and mother all testified. Plaintiff was represented by counsel at the hearing. On December 20, 1974, the administrative law judge rendered a decision unfavorable to plaintiff (Tr. 7-14). At plaintiff's request the decision of the hearing examiner was reviewed by the Appeals Council, which affirmed the administrative law judge's conclusion on February 14, 1975 (Tr. 4). Thus, the decision of the administrative law judge became the final decision of the Secretary. The findings issued by the administrative law judge on December 20, 1974 (Tr. 14) were:
"1. Claimant met the special earnings requirements on November 15, 1969, claimant's alleged onset date, and continues to meet the earnings requirements through December 31, 1972.
"2. Claimant's principal occupation was that of a PBX operator, telephone operator, and hotel desk clerk.
"3. Claimant suffers from minimal osteoarthritis of the spine, residuals of a hysterectomy, severe loss of vision in the right eye, low back strain and psychoneurosis conversion reaction, musculo-skeletal type.
"4. Claimant's combined physical and mental impairments were not disabling on or prior to December 31, *615 1972, the date claimant last met the earnings requirements.
"5. Claimant's combined physical and mental impairments were not so severe as to have prevented sedentary work on or prior to November 15, 1969, and through December 31, 1972, the date the claimant last met the earnings requirements.
"6. Claimant was capable and is capable of performing substantial gainful activity on or prior to November 15, 1969, and through the date of December 31, 1972, the date the claimant last met the earnings requirements.
"7. Claimant was not under a `disability' as that term is defined under the Act, for a continuous period of 12 months or more on or prior to November 15, 1969, and through the date of December 31, 1972, the date the claimant last met the earnings requirements."
The issue before this Court is the correctness of the Secretary's conclusion that plaintiff does not suffer from a "disability" as defined in the Act. Plaintiff seeks reversal of the Secretary's decision under 42 U.S.C. § 405(g) which provides that the District Court may, upon the pleadings and transcript of the record, enter judgment affirming, reversing or modifying the final decision of the Secretary.
"Disability" is defined in 42 U.S.C. 423(d)(1)(A) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A) provides in part as follows:
"[A]n individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), `work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."
In Celebrezze v. Bolas, 316 F.2d 498, 500-01, 507, the Eighth Circuit Court of Appeals has set forth the legal standards to be applied to cases of this type as follows:
"(a) the claimant has the burden of establishing his claim; (b) the Act is remedial and is to be construed liberally; (c) the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence; (d) substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (e) it must be based on the record as a whole; (f) the determination of the presence of substantial evidence is to be made on a case-to-case basis; (g) where the evidence is conflicting it is for the Appeals Council on behalf of the Secretary to resolve those conflicts; (h) the statutory definition of disability imposes a three-fold requirement (1) that there be a medically determinable physical or mental impairment which can be expected to [result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months], (2) that there be an inability to engage in any substantial gainful activity, and (3) that the inability be by reason of the impairment; (i) such substantial gainful activity *616 is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training and experience; (j) the emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable; and (k) it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within the range of the claimant's capacity remains for him to exercise."
These standards have been reiterated in Brasher v. Celebrezze, 8 Cir., 340 F. 2d 413; Garrett v. Richardson, 8 Cir., 471 F.2d 598, and Klug v. Weinberger, 8 Cir., 514 F.2d 423 (1975).
The court has examined the transcript of the proceedings and exhibits before the hearing examiner. The plaintiff's application for disability benefits filed on June 5, 1973, is predicated upon her alleged inability to work due to bladder problems, a fallen womb, scar tissue from a hysterectomy, bronchitis and arthritis of the spine (Tr. 80).
Plaintiff testified at her hearing that she was born July 27, 1924, and that she completed the third grade in school (Tr. 26). Concerning her former employment, plaintiff testified that she has in the past picked and chopped cotton, worked in several hotels as a desk clerk and PBX operator, worked a switchboard, operated machinery in a small arms plant, and worked as a waitress in various restaurants (Tr. 27-33). Plaintiff's latest employment was as a waitress in the Mark Twain Hotel from January, 1967, until July, 1969 (Tr. 33). While there, Mrs. Russell testified that she had some difficulty reading the menu because of her poor eyesight (Tr. 40). Due to her back pain and fainting spells, plaintiff testified that she sat down too often at the Mark Twain Hotel and was consequently discharged (Tr. 47-48). Other than an attempt to operate a rooming house for four months in 1973 (Tr. 46-47), the plaintiff has been unemployed since 1969 (Tr. 37).
Concerning her alleged disability, plaintiff testified that in October of 1969, she began to suffer from arthritis in her back, bronchitis and gall bladder problems (Tr. 34-35). Plaintiff complained at her hearing that she has been hemorrhaging from a hysterectomy she had at age twenty-eight (Tr. 39). Plaintiff testified that she has difficulty in walking at times because her right leg gets numb, and she also gets cramps in her feet and legs (Tr. 40). Plaintiff testified that she is blind in her right eye and has only limited vision in her left eye (Tr. 41). Plaintiff further testified that despite her ability to perform light housekeeping, she can no longer work at any of her previous jobs as a waitress, telephone operator or desk clerk because she experiences too much pain when she sits or stands too long (Tr. 43). In addition, she testified that she suffers from migraine headaches and shortness of breath (Tr. 43). Plaintiff's husband testified that he does most of the work around their house because his wife has back problems and dizzy spells (Tr. 54-55). Vallie Miller, plaintiff's sister, testified that since 1967 she has noticed that the plaintiff "wasn't getting around like she did" (Tr. 58), and that she could perform very little housework (Tr. 60). Finally, Eva May Combs, plaintiff's mother, testified that since the late 1960's, she has noticed that her daughter has back pains and could not "keep her house like she should" (Tr. 62). Also, plaintiff's mother confirmed that at the age of four, her daughter had severely injured her right eye (Tr. 62-63).
The medical evidence of record reveals that the plaintiff consulted Dr. Walter H. Spoeneman, M.D., a general practitioner (Tr. 159), who examined her on November 4, 1971 (Tr. 114-115). Dr. Spoeneman's report indicates that plaintiff complained of pain in almost all of her joints; difficulty in walking and *617 bending over; and of arthritis existing mostly in her hands, back and shoulders (Tr. 114). Furthermore, the report indicates that plaintiff had a small tumor under her right breast, and that an examination on October 8, 1970, showed a pedunculated fibroid (Tr. 114). Dr. Spoeneman's diagnoses were that the plaintiff was suffering from osteoarthritis involving practically all of her joints, nervous instability and depression (Tr. 114). Finally, Dr. Spoeneman concluded that the plaintiff will be totally and permanently disabled for the remainder of her life (Tr. 115).
At Dr. Spoeneman's request, the plaintiff was examined by Dr. Robert C. Drews, an ophthalmologist (Tr. 160). Dr. Drew's report of November 3, 1971 (Tr. 116-117) indicated that plaintiff complained of an injury to her right eye at age three which resulted in an old central corneal scar with amblyopia in the right eye (Tr. 116-117). Visual acuity in the right eye was 3/75 without correction and could not be improved with refraction (Tr. 116). The visual acuity in plaintiff's left eye was 20/50+ but improved to 20/40 when window glass was held in front of the eye (Tr. 116). Refraction did not improve the left eye's vision, and the visual acuity there was 20/140+ at ten feet (Tr. 116). Thus, Dr. Drews' diagnosis was that despite the defect in the right eye, plaintiff's left eye was normal, and she was experiencing conversion reaction and/or neurosis (Tr. 117).
Dr. Harold J. Joseph, M.D., a specialist in internal medicine (Tr. 161), examined the plaintiff (Tr. 118-121) and noted that an X-ray examination of the lumbosacral spine revealed a marked narrowing of the interspace L5-S1 (Tr. 120). His conclusions, therefore, were chronic low back strain with degenerative disc disease and hypertrophic osteoarthritis (Tr. 120). Based upon these findings, Dr. Joseph determined that the plaintiff could engage only in sedentary type activities (Tr. 120). Also, Dr. Joseph concluded that his further findings of cystocele, a meibomian gland cyst and a depressive reaction did not contribute to Mrs. Russell's disability (Tr. 120).
On February 4, 1972, Dr. Joseph S. Shuman, M.D., a psychiatrist and neurologist (Tr. 162), examined the plaintiff (Tr. 123-125) and diagnosed that the plaintiff was suffering from psycho-neurosis, conversion reaction, musculo-skeletal type (Tr. 125). However, Dr. Shuman stated that his neurological examination was unsatisfactory due to plaintiff's lack of cooperation (Tr. 125). In the psychiatric examination, Dr. Shuman noted no severe mental impairments (Tr. 125). Finally, he concluded that although Mrs. Russell "does not seem a likely candidate to return to work" and that the "prognosis is poor", some of her problems "are outright gross exaggeration" (Tr. 125).
Dr. Saengsamran, M.D., a specialist in internal medicine (Tr. 163), examined the plaintiff on July 19, 1973 (Tr. 126-127). He concluded that Mrs. Russell was suffering from a depressive reaction, "mild" degenerative arthritis of the lumbar spine and post-menopausal syndrome (Tr. 127).
The medical record further reveals that the plaintiff was hospitalized at Madison Memorial Hospital in Fredericktown, Missouri, from August 23, 1973, until September 4, 1973 (Tr. 128-144). Mrs. Russell "was admitted with urinary stress incontinence and protruding mass in the vagina" (Tr. 129). The "pelvic examination revealed cervical stump with big cervical fibroid, also large cystocele" (Tr. 129). Hence, on August 27, 1973, the cervical stump, cervical fibroid and ovarian cyst were surgically removed. The plaintiff was discharged eight days later in good condition (Tr. 129).
The plaintiff was readmitted to Madison Memorial Hospital for a second time from October 8, 1973, until October 17, 1973 (Tr. 145-158). At this time, plaintiff had both ovaries removed and repair *618 of urinary stress incontinence. Plaintiff was discharged in good condition (Tr. 147).
Plaintiff's third admission to Madison Memorial Hospital was from January 20, 1974, until January 24, 1974 (Tr. 169-198). An examination of plaintiff's left breast had "revealed a mass about 5 cm. in diameter" (Tr. 170). An excisional biopsy of the mass determined it to be fibrocystic disease (Tr. 170).
Dr. Sermchief, M.D., a specialist in obstetrics and gynecology (Tr. 164), was the attending surgeon on all three of the above hospital admissions (Tr. 128-199). The plaintiff made seventeen office visits to Dr. Sermchief in addition to the three hospital admissions (Tr. 165). Dr. Sermchief's first examination of the plaintiff was on August 22, 1973 (Tr. 165). In Dr. Sermchief's medical opinion of plaintiff's condition, he stated that although Mrs. Russell is suffering from "minimal" osteoarthritis and eye problems, she is totally and permanently disabled (Tr. 167).
In order to prove that she is disabled plaintiff must show, first, that there is some medically determinable physical or mental impairment, and second, that the impairment is of such nature as to render plaintiff unable to engage in substantial gainful employment. In addition, plaintiff must establish that her "disability" existed prior to December 31, 1972, when her insured status expired.[1]Blalock v. Richardson, 483 F. 2d 773 (CA4 1972).
The administrative law judge at plaintiff's hearing found that she suffered from "minimal osteoarthritis of the spine, residuals of a hysterectomy, severe loss of vision in the right eye, low back strain and psycho-neurosis conversion reaction, musculo-skeletal type" (Tr. 14). A determination that plaintiff is not disabled was made after a consideration of the total effect of all of plaintiff's impairments against the background of her educational background, work history, and age. The plaintiff's ailments "must be considered in combination and must not be fragmentized in evaluating their effects." Hicks v. Gardner, 393 F.2d 299, 302 (CA4 1968); Underwood v. Ribicoff, 298 F.2d 850 (CA4 1962).
The medical evidence in the record reveals that plaintiff's complaints of various female problems such as cervical fibroid, cystocele, removal of cervical stump, removal of ovarian cyst, removal of both ovaries, repair of urinary stress incontinence and fibrocystic disease are all the result of three separate occasions of surgery performed after December 31, 1972, the expiration of her insured status. Whether plaintiff's medical problems, themselves, which required surgery disabled her prior to December 31, 1972, this Court cannot discern. Plaintiff has the burden of showing by substantial evidence that she was disabled from engaging in any substantial gainful activity on or before her period of insurability. Johnson v. Richardson, 486 F.2d 1023, 1024 (CA8 1973). In any event, neither these impairments which occurred after her period of insurability had expired, or those female problems which occurred prior to December 31, 1972, such as bladder problems, a fallen womb or scar tissue from a hysterectomy, are of such a character either by themselves or in combination with other ailments that they could constitute a "disability" which "can be expected to last for a continuous period of not less than 12 months" as stated in 42 U.S.C. § 423(d) (1) (A).
Although plaintiff claims that she suffers from bronchitis, not a single doctor made reference to it in his diagnosis of the plaintiff's condition. A claimant is not entitled to disability benefits where the impairment is not demonstrable *619 by medically acceptable clinical and laboratory diagnostic techniques. Floyd v. Finch, 441 F.2d 73 (CA6 1971).
Concerning plaintiff's eyesight, the administrative law judge found that the plaintiff suffered from a severe loss of vision in the right eye. However, plaintiff's poor eyesight by itself or in combination with her other ailments is insufficient to constitute a disability. The record reveals that plaintiff has been blind in her right eye since the age of four; however, Mrs. Russell has managed to hold several jobs up until 1969. As noted earlier, the medical examination by Dr. Robert Drews revealed a visual acuity of 3/75 in plaintiff's right eye without correction and with no improvement through refraction, but an improved visual acuity of 20/40 in her left eye when window glass was held before it. The Act provides in Section 216(i)(1), 42 U.S.C. § 416(i)(1): "* * * the `disability' means * * * (B) Blindness; and the term `blindness' means central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." The plaintiff clearly does not fall within this provision, as with corrective lens she had 20/40 vision.
Concerning plaintiff's osteoarthritis, the plaintiff consulted Dr. Walter Spoeneman, who concluded that she was suffering from osteoarthritis involving nearly all of her joints, nervous instability and depression. Based upon these findings, he determined that plaintiff was totally and permanently disabled for the remainder of her life. Dr. Sermchief, also, was consulted by the plaintiff, and his findings were "minimal" osteoarthritis and eye problems. His opinion, too, was that plaintiff is totally and permanently disabled. It should be noted that Dr. Spoeneman's conclusions were not supported by the results of objective, clinical laboratory tests. Therefore, the administrative law judge may give whatever weight he deems warranted to a physician's statements which are devoid of specific and complete clinical evidence. Kirkland v. Weinberger, 480 F.2d 46 (CA5 1973), cert. denied, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973). Dr. Sermchief's opinion is that plaintiff was disabled "before" he saw her on August 22, 1973. However, he does not say what his opinion is as to plaintiff's alleged disability before the expiration of her earnings requirement on December 31, 1972. Irregardless of the untimeliness of Dr. Sermchief's conclusion or the absence of supporting clinical evidence for Dr. Spoeneman's conclusion, opinions of physicians regarding the ultimate issue of disability, although helpful, are not conclusive. Halsey v. Richardson, 441 F.2d 1230 (CA6 1971).
Dr. Saengsamran examined the plaintiff on July 19, 1973, and reported his findings as depressive reaction, "mild" degenerative arthritis of the lumbar spine and post menopausal syndrome.
Dr. Joseph stated in his examination of plaintiff on December 2, 1971, that X-ray evidence revealed degeneration of the L5-S1, chronic low back strain and degenerative disc disease. Despite such a diagnosis, Dr. Joseph concluded that plaintiff could engage in sedentary type activity. A back impairment, alone, has been held insufficient to constitute a disability if work which is sedentary in nature could be performed by the claimant. Timmerman v. Weinberger, 510 F. 2d 439 (CA8 1975).
By her own testimony in the hearing transcript, the plaintiff admits that she is, indeed, familiar with employment which is sedentary in nature, because she previously worked as a hotel desk clerk, switchboard operator, PBX operator and as a factory worker in a small arms plant.
Every doctor whose examination is in the record suggested in some degree or another that plaintiff suffers from some form of neurosis, depression or nervous condition. Although Dr. Shuman, a psychiatrist, concluded that plaintiff was suffering from psycho-neurosis, conversion reaction, musculo-skeletal *620 type, he remarked that plaintiff spoke quite appropriately, "showing no special blocking, flights of ideas, circumstantiality or irrelevance" (Tr. 125). Nor were there any indications of "delusions, illusions, hallucinations, ideas of reference, obsessions, compulsions or phobias" (Tr. 125). Dr. Shuman also concluded that some of plaintiff's complaints were "outright gross exaggeration" (Tr. 125). Similarly, Dr. Joseph stated in his medical examination that the cystocele and the meibomian cyst were not contributing to plaintiff's disability "nor is her depressive reaction which is mild" (Tr. 120). The mere presence of a mental disturbance is not disabling per se. Ragan v. Finch, 435 F.2d 239 (CA6 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971).
There are also several indications in the record that plaintiff did not always fully cooperate or that her reactions were exaggerated during her medical examinations. Both Dr. Drew and Dr. Shuman stated that the plaintiff had difficulty keeping her eyes open during the eye examinations. However, when they finished their examinations, her eyes opened quite normally (Tr. 117, 124). In addition, Dr. Shuman reported that he had to omit a great deal of his neurological examination of the plaintiff because of her claims of great pain and suffering (Tr. 124). Dr. Shuman stated that he "felt all of her reactions during the neurological examination were exaggerated" (Tr. 124). Among other complaints, Dr. Shuman further remarked that in the pin prick exam, the plaintiff's reactions were very inconsistent and non-anatomic in nature. Dr. Shuman noted that "this is seen in malingerers and hysterics" (Tr. 124). Dr. Shuman concluded his neurological exam by saying it was unsatisfactory due to plaintiff's lack of cooperation (Tr. 125). The courts have allowed the hearing examiners to consider a claimant's uncooperative and exaggerated responses during a medical examination in their determination of the existence of a disability. Brasher v. Celebrezze, 340 F.2d 413, 418 (CA8 1965).
The plaintiff's principal contention is that both Dr. C. Sermchief and Dr. Walter H. Spoeneman concluded after examining the plaintiff that she is totally and permanently disabled. The plaintiff further contends that those medical opinions of total disability go unrefuted in the record. This is not so. The plaintiff's position is, indeed, contradicted by the balance of the evidence on record. Combined ailments such as a "mild" nervous condition; residuals of a hysterectomy; loss of vision in only the right eye; and "minimal" osteoarthritis of the thoracic spine, all considered in light of instances of exaggerated responses and non-cooperation in the medical examinations, clearly demonstrate a basis for a finding of non-disability. In addition, it is well established that conflicts in the evidence are for the Secretary and not the Court to resolve. Celebrezze v. Bolas, supra.
Furthermore, after considering plaintiff's condition, Dr. Joseph concluded in a written report that her ailments and back impairment would permit her to engage in sedentary type employment (Tr. 120). The United States Supreme Court has specifically held that a written report by a physician who has examined the claimant "may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant", even where there is other medical evidence directly opposing such a report. Richardson v. Perales, 402 U. S. 389, 402, 91 S.Ct. 1420, 1428, 28 L. Ed.2d 842 (1971).
Despite a careful evaluation of the effect of plaintiff's combined ailments, this Court finds that she has failed in meeting her burden of proof. Both the testimony at plaintiff's hearing and medical evidence within the record, clearly establish that there is a lack of severity in her combined physical and mental ailments; there are instances of exaggerated responses and non-cooperation *621 in medical examinations; and she is familiar with and capable of performing sedentary jobs in a number of areas. Hence, there is substantial evidence in the record to support the finding of the administrative law judge, that plaintiff is not disabled within the meaning of the Social Security Act.
Accordingly, the plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is sustained.
The clerk of the Court is directed to prepare and enter the proper order to that effect.
NOTES
[1] For insured status under the Act, 42 U.S. C. §§ 416(i) (3) (B) and 423(c) (1) (B), an individual is required to have 20 quarters of coverage in the 40-quarter period ending with the first quarter of disability. This is the so-called "earnings requirement". Plaintiff last met this requirement on December 31, 1972.