427 F.Supp. 260 (1977)
Tex W. ENNIS, Plaintiff,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant.
No. 76-861 C (1).
United States District Court, E. D. Missouri, E. D.
February 18, 1977.
*261 Tex W. Ennis, pro se.
Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, Chief Judge.
This action was commenced in forma pauperis by plaintiff Tex W. Ennis under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the defendant Secretary of Health, Education, and Welfare[1] denying benefits. The Secretary has filed a motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, with the administrative record and a memorandum of law in support. Plaintiff has filed a pro se memorandum in opposition to the motion for summary judgment.
On April 29, 1975 plaintiff filed applications for disability insurance benefits under Section 223 of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income under Section 1602 of the Act, 42 U.S.C. § 1381a. Both applications were denied after initial consideration and after reconsideration. On December 30, 1975 a hearing was held before an administrative law judge on plaintiff's applications. On March 15, 1976 the applications were denied. The denial was affirmed by the Appeals Council of the Social Security Administration on May 7, 1976. Thereafter this action was timely commenced.
The scope of review by this Court of this administrative final decision is limited to whether or not it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Easttam v. Secretary, 364 F.2d 509 (8th Cir. 1966). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Timmerman v. Weinberger, 510 F.2d 439 (8th Cir. 1975). The administrative law judge made the following specific findings of fact:
1. Claimant meets the special earnings requirements for a period of disability *262 and disability insurance benefits through the date of this decision.
2. Claimant's mental impairment is not so deep-seated and fixed and of such severity as to preclude claimant from working.
3. The evidence fails to establish that the claimant has any other severe impairment or impairments.
4. Claimant is capable of engaging in his prior, usual or regular jobs.
5. The claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision (or on or before the date of the application for supplemental security income), which has lasted or could be expected to last for at least 12 months.
6. The claimant was not under a "disability" as defined in the Social Security Act, as amended, with reference to a period of disability or disability insurance benefits, at any time prior to the date of this decision.
7. The claimant was not under a "disability", as defined in section 1614(a)(3)(A) of the Social Security Act, as of the date of filing the application for supplemental security income and continuing through the date of this decision.
(Tr. 10-11).
In both applications for benefits plaintiff, who now resides in St. Louis, Missouri alleged that he became disabled on April 26, 1975 due to nerves. During the course of the hearing before the administrative law judge it was learned that plaintiff suffers from substantial vision impairment in his left eye.
Plaintiff was born September 6, 1943. He remained in school until the ninth grade and, in later years, scored through the twelfth grade in the General Education Development test (Tr. 23). In October, 1961, he served in the military for twenty-one days, receiving an administrative discharge for his psychological inability to adapt (Tr. 23-24, 50).
Plaintiff testified that he worked in Potosi, Missouri until 1964, for six years as a clerk and janitor for a paint store, as a stock boy in a grocery for a few months, as a clerk in a dry goods store for a few months, as a stock boy in a dime store for approximately three months, and as a stock clerk, truck driver and yard boy for a lumber company (Tr. 24-27).
He worked in St. Louis for two and one half years as a receiving clerk at a paper company. In this employment he unloaded trucks, received merchandise, stocked shelves and drove a fork lift (Tr. 28). He worked for approximately two and one half weeks as a fork lift driver for another paper company in St. Louis before suffering an on the job injury on July 10, 1968. While working he was struck by a five hundred pound bale of corrugated paper which fell from the fork lift truck (Tr. 29).
Plaintiff was admitted to Incarnate Word Hospital for examination following his on the job injury. A comminuted fracture of the scapula was observed (Tr. 137, 138). Spinal examination revealed a marked compression deformity involving the bodies of the fourth and fifth dorsal vertebrae with right lateral compression of the body of the fifth. There was some kyphotic deformity and lateral angulation at the level of the interspace between D4 and D5 (Tr. 140). On December 14, 1968 the scapula fracture was described as healed (Tr. 141). As a result of this injury plaintiff did not work for approximately seven months (Tr. 29).
Thereafter for approximately two years he worked as a service station attendant (Tr. 30), and from August 1970 to April 1975 he worked as a receiving clerk for an auto supply company (Tr. 31). He has not worked since April 25, 1975 (Tr. 31, 50, 71).
Petitioner testified that due to his nervous condition he cannot stand pressure and does not want to be around people. He said he has been bothered by nerves all of his life (Tr. 32). Since his last employment his condition has gotten no better (Tr. 34). Around the house he throws temper tantrums, has no hobbies or outside activities, *263 and passes the time by watching television, sleeping or eating (Tr. 34-36).
On August 19, 1964 plaintiff was admitted to the Farmington State Hospital, Farmington, Missouri after being taken into custody for beating his wife. He remained hospitalized for approximately six weeks (Tr. 32). He was diagnosed as having psychoneurosis, anxiety reaction. His anxiety was described as greatly relieved by the administration of Thorazine and Tofranil (Tr. 89).
In May 1975 plaintiff was examined psychiatrically at the Neighborhood Health Center, St. Louis, Missouri. After reviewing plaintiff's history and interviewing him regarding his condition, it was noted that no real obsession, no hallucination or any other evidence of psychosis was present (Tr. 116). His condition was diagnosed as anxiety neurosis with depression (Tr. 117). Plaintiff was placed on medication and it was considered that he would need at least a couple of months away from a work situation while on treatment to avoid further decompensation and to avoid hospitalization (Tr. 117). Plaintiff was examined a week later, on May 22, 1975. He appeared calmer and the topic of his receiving a vasectomy was discussed (Tr. 118). In June 1975 plaintiff was examined by the Neighborhood Health Center. He complained of episodes of anxiety and medication was continued. Private insurance disability forms were completed, indicating a continuation of disability for five or six weeks (Tr. 112).
On June 26, 1975 petitioner was again examined at the health center. He complained of moderate anxiety attacks and some mild insomnia. However, he appeared less anxious. He was informed that in four weeks he had to find work because the disability forms might not be signed. It was reported that on July 21, 1975 the execution of the disability forms would no longer be proper (Tr. 111).
On August 3, 1975 plaintiff was examined by Dr. Thomas K. Mangelsdorf, a psychiatrist, who diagnosed (1) anxiety reaction, mild, aggravated by caffeinism; (2) paranoid personality, moderately severe; and (3) emotional deprivation (Tr. 104). He reported in part as follows:
No definite delusions elicited. He is not hallucinating. No suicidal ideas, although he does say that he gets depressed and fed up. He is well oriented to time, place, person, and situation, calculates rapidly and concentrates well. Motivation to work is very low. All he wants to do is sit and watch TV. He keeps insisting he can't work because he can't take the harassment, but he is not very specific about this. When asked why he couldn't work at a job where he would work pretty much on his own and wasn't around people so much, he did not give a satisfactory answer. He emphasized mostly that people upset him and make his "stomach go to pieces". He says that he can't trust anyone.
(Tr. 103). Dr. Mangelsdorf reported plaintiff's IQ to be 94 and stated that he believed that plaintiff is able to work, that his general difficulty in getting along with people does constitute some impairment, and that he would do better on jobs where he would work alone (Tr. 104).
On September 15, 1975 plaintiff was again examined at the Neighborhood Health Center. He did not appear depressed, anxious, or suicidal (Tr. 127).
Between September 17 and December 17, 1975 plaintiff visited Dr. Anton Heusler who diagnosed plaintiff's condition as chronic, undifferentiated schizophrenia (Tr. 122-123).
During November and December 1975 and in January 1976 plaintiff visited the Neighborhood Health Center. He was given medication for hallucinations; anxiety was noted (Tr. 128-130). On January 28, 1976 plaintiff appeared to be in a stable mood and in good humor. Nevertheless he complained of feeling disorganized, having no energy, and people talking about him (Tr. 132).
On March 10, 1976 plaintiff's eyes were examined. The visual acuity in his right eye was 20/20, and in his left eye it was 20/30 (Tr. 144). In his memorandum plaintiff argues, with documentary support, that *264 the vision in his left eye was reported to be 20/60. There is no evidence, however, that plaintiff's eye condition prevented him from working in the past.
During the hearing before the administrative law judge plaintiff's wife testified that his condition had not improved since he quit working and that, because she is afraid he will hurt the children, she does not leave him alone with them (Tr. 42-45).
The pivotal finding by the administrative law judge upon which the denial of benefits was based was that plaintiff's impairment was not sufficiently severe to preclude him from performing "his prior, usual, or regular jobs." (Tr. 10, 11).
It is the opinion of the Court that the decision of the administrative law judge is supported by substantial evidence in the record taken as a whole. Plaintiff has been diagnosed as having anxiety neurosis, but without obsessions, hallucinations or evidence of psychosis. He always appeared well oriented to time, place, person and situation. The record contains indications that his condition can be controlled with medication. A remedial condition is not disabling under the Social Security Act. 20 C.F.R. § 404.1507. As noted by the administrative law judge, plaintiff "has been able to maintain employment during his adult life despite his personality structure." (Tr. 10). In July, 1975 plaintiff was capable of returning to work. Clearly plaintiff's mental impairment, controlled by medication, is not shown to be of sufficient severity to render him unable to engage in his past employment, especially that of service station attendant, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).
Therefore, it is the opinion of the Court that the motion of the Secretary for summary judgment should be granted and the action be dismissed. An appropriate order will be issued.
NOTES
[1] The Court sua sponte judicially notices that Joseph A. Califano, Jr., has succeeded F. David Mathews to the office of Secretary of Health, Education, and Welfare and substitutes Califano for Mathews as the party defendant. See Fed.R.Civ.Pro. 25(d)(1).