Alfred P. GILLIAM, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 78–1309C(A).

United States District Court, E. D. Missouri, E. D.

May 10, 1979.

Harry J. Nichols, Robert A. Crowe, St. Louis, Mo., for plaintiff.

Anne C. Travis, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM–OPINION

HARPER, District Judge.

Alfred P. Gilliam has filed a petition for judicial review of a decision of the Secretary of Health, Education and Welfare denying him disability insurance benefits. These proceedings are reviewable by the District Court pursuant to 42 U.S.C. § 405(g).

Gilliam originally filed his original application to establish disability and secure insurance benefits on September 8, 1977. The application was considered and reconsidered by the Secretary and ultimately denied on March 10, 1978.

Plaintiff requested a hearing which was held on May 10, 1978, where he was represented by his present counsel. He and a vocational expert appeared and testified. On June 20, 1978, the Secretary's law judge ruled against the plaintiff, finding him not under a "disability" as defined in the Act. The Appeals Council of the Social Security Administration confirmed the decision of the Administrative Law Judge and consequently that decision becomes the "final decision" of the Secretary, reviewable by this Court.

At his hearing, Gilliam testified that he was fifty-five years of age, about five foot-eleven inches tall and weighed 168 pounds. He indicated he had completed seven grades of school and had no formal business training, although he operated as a self-employed manufacturer of aluminum windows and awnings for about fifteen years.

He revealed his work history to have been first a carpenter from 1946 to 1951 and then an underground mining drill operator from 1951 to 1962 (Tr. 31). After that he purchased the Missouri Window and Awning Sales, which he conducted until the business was destroyed by fire on February 2, 1977.

Gilliam indicated he was married and had two grown children. He denied the use of alcohol, but indicated that he smoked approximately two packs of cigarettes a day, down from four or five that he previously smoked (Tr. 36–37). He indicated he usually retired by 11:00 or 12:00 p. m., and then awakened at 2:00 or 3:00 a. m. and then retired again at 8:00 a. m. He said he spent most of the day drinking coffee, smoking cigarettes and laying on the couch. He claimed his hips disallowed his standing or sitting for over half an hour. He indicated he could lift ten pounds, but that his walking was restricted to about 150 feet. He claimed he would be unable to take a job doing light duties (Tr. 40). However, he admitted he had not attempted to secure work since his business burned down.

He claimed that he started to reconstruct his building and that he put up with the pain as long as he could, and that his doctor told him to quit. He said he had spent about $10,000 toward the reconstruction (Tr. 42–43).

He said he did light housework, including occasionally washing the dishes, but that he had to give up fishing, which was his principle sport. He indicated that prior to the fire, he drove about 200 miles a week carrying on his business (Tr. 51–52). He stated that his physical problems were in his hips, hands, shoulders, back and feet, and that he suffered from arthritis and diabetes. He claimed his treating physician was one Dr.

Appleberry, and that he took Oricin [sic] for diabetes, Tylenol and Codeine for arthritis and Breathine [sic] for asthma. There was no mention of Insulin in the treatment of diabetes. He indicated he also took Medrol [sic] for asthma. He claimed to have discontinued working on the advice of his physician in August of 1977 (Tr. 55).

Under examination by his attorney, he indicated that he did none of the actual work in attempting to reconstruct his business, but that he was just an overseer. He testified that he had a couple of accidents, including a fall on the ice in 1975, and also a fall from a ladder in 1975, which fractured his tail bone (Tr. 58–59). These accidents incapacitated him for seven months and, thereafter, he returned to work. He claimed that presently he was unable to use a screwdriver or to remove a top from a fruit jar, and also required help getting out of the tub. He said his wife assisted him with tying shoes and putting on his clothes (Tr. 61–62). He stated he was an ex-baseball player, but stopped that activity in 1974. He stated he had been an apprentice carpenter and knew how to operate power tools.

Dr. Thomas T. Boyd, a vocational counselor, testified at the hearing. He indicated he had audienced the testimony and had familiarized himself with the exhibits. Boyd indicated the claimant possessed a tremendous number of skills and that he was a very capable, well trained individual. Dr. Boyd defined sedentary work as lifting ten pounds on a job that allows sitting a certain period, also walking and standing, with duties being defined as up to two hours and forty minutes total of a work day (Tr. 75). In answer to a hypothetical question, which assumed that Gilliam had no physical or mental impediments, Boyd testified that he felt Gilliam capable of performing numerous sedentary jobs in assembling and using machine tools, which were available in Gilliam's geographical area.

Under cross-examination by Gilliam's attorney, Dr. Boyd conceded that if the claimant had such impairments that disallowed his putting on a shirt or tying his shoes

without assistance, and had inability to get out of the tub or twist off the lid of a jar, and further that he was unable to walk more than 150 feet and was required to spend four or five hours a day laying down because of pain, that he would then be unable to perform sedentary jobs. The doctor replied that if the claimant could not perform the "activities of daily living", then he could not work.

Medical evidence adduced at Gilliam's hearing included a report from the Bonne Terre Hospital dated September 8, 1977, which indicated an admission for clinical evaluation and diagnosis. Dr. C. H. Appleberry was the admitting physician. Gilliam complained of "Pain in back, hips and shoulders". Diagnosis of Gilliam at this time showed osteoarthritis of the spine and multiple joints, severe. It also revealed asthma and chronic bronchitis. X-rays revealed minimal degenerative changes. Disability was not mentioned (Tr. 117–122).

A medical report has been submitted by R. A. Huckstep, M.D., dated October 13, 1977. A rather thorough examination was unspectacular except for complaint and flinching on lumbar back palpations. Dr. Huckstep got the impression that these were exaggerated responses, and that Gilliam had good range of motion. He concluded by observing that Gilliam probably had a prior fracture of the sacrum in 1975, and that he had osteoarthritis in the spine and right shoulder. No disability was mentioned (Tr. 124–128).

A pulmonary work study was done on Gilliam at the Farmington Community Hospital on October 13, 1977. This revealed a suggestion of moderate obstructive pulmonary disease.

We feel it worthy of note that Gilliam submitted or assisted in the preparation of a residual function capacity questionnaire on October 20, 1977, in which he indicated that he was able to sit, stand and walk seven hours out of an eight hour day. He indicated he could frequently lift ten to twenty pounds, and occasionally twenty-one to fifty pounds. He further indicated he could occasionally bend, squat, crawl and

climb, and frequently reach above his shoulder level. He concluded that he had no restrictions on exterior industrial exposures, i. e., being around moving machinery, exposure to temperatures, driving automotive equipment, heights and exposure to dust, fumes and gases (Tr. 132).

Marshall B. Conrad, M.D., reported on February 21, 1978. He performed a rather thorough orthopedic study on the patient, which was unspectacular other than revealing the presence of arthritic spurring and osteoarthritis. Dr. Conrad concluded that the plaintiff's complaints were out of proportion to his findings (Tr. 133–135).

Dr. C. H. Appleberry, in a brief report, dated April 25, 1978, stated, "As of August 31, 1977, I do not think he (Gilliam) is able to work" (Tr. 146). He offered no clinical or laboratory findings in support of this conclusion.

At the conclusion of the hearing, the Administrative Law Judge ruled against the claimant, with the following findings:

(1) The claimant met the special earnings requirements of the Act on February 2, 1977, the alleged disability onset date, and continues to meet them through the date of this decision.

(2) The claimant has a seventh (7th) grade education. The most recent steady work experience was that of a storm door and window manufacturer. He has also worked as a drill operator and carpenter.

(3) The medical evidence establishes that the claimant is presently suffering from diabetes; asthma and moderate obstructive pulmonary disease; and arthritis, cervical and lumbar spine.

(4) Considering the claimant's residual physical capacity and vocational background, claimant is able to perform the jobs described by the vocational expert and which are present in significant numbers in the region where claimant lives.

(5) The evidence fails to establish that claimant's impairments have prevented him from engaging in sub-

stantial gainful work activity for any continuous period beginning on or prior to the date of this decision which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

(6) The claimant was not under a "disability" as defined under the Act, commencing at any time prior to the issuance of this decision.

Both the claimant and the Secretary have submitted memoranda in support of their positions and have filed cross-motions for summary judgment.

■ The Secretary has accurately indicated that the burden of proof is squarely on the plaintiff to establish his entitlement to disability benefits, citing *Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir. 1975). *Miller v. Finch*, 430 F.2d 321 (8th Cir. 1970).

■ Plaintiff's treating physician, Dr. C. H. Appleberry, in a four sentence report dated April 25, 1978, stated, "As of August 31, 1977, I do not think he is able to work". The Secretary's two examiners, Drs. Huckstep and Conrad, filed thorough and complete physical examination reports, neither of which revealed any major orthopedic deficiencies and both of which indicated that Gilliam's subjective complaints were excessive to their objective findings. The vocational expert also supported the Secretary. Thus, we have this conflict in medical evidence which is normally the prerogative of the Administrative Law Judge to resolve. *Janka v. Secretary of HEW*, 589 F.2d 365 (8th Cir. 1978).

■ The District Court's review is limited under the statute, and this Court has no right interfering in the Secretary's decision if it is, in fact, supported by substantial evidence. Claimant's attorney has competently briefed his position and has cited *Yawitz v. Weinberger*, 498 F.2d 956 (8th Cir. 1974), which allowed disability for headaches, which were almost completely subjective in manifestation. We concede that *Yawitz* and numerous other cases have established that pain alone can support a claim for disability benefits. There is a

suggestion from both Drs. Conrad and Huckstep that claimant, if not a malingerer, is at least exaggerating his responses to palpations and touch. The natural gerontological decline of man brings about most of the complaints suggested by the plaintiff. This is not to suggest that a man in his mid-fifties should automatically expect disability. However, pains in the hips, hands, shoulders and back, generated by arthritis, are common to men at this age. We feel that the Administrative Law Judge was influenced by the fact that claimant has sought no employment since his business was destroyed by fire. Further, the admissions made by Gilliam at the time of the submission of his residual function capacity questionnaire, do not suggest disability. Claimant's attorney attacks the origin and composition of this questionnaire and, indeed, perhaps that should have been clarified at the time of the hearing. At any rate, the Secretary's decision here is grounded upon the testimony of two competent physicians who have submitted in-depth medical reports, which were visibly adequate to support his findings that the claimant was not under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i) and 423(d).

We concede that the record here might support a finding in the opposite direction. This is one of the anomalies of Social Security review. However, where there is conflicting evidence, sufficient to support either outcome, we must affirm the findings of the Secretary. *Easttam v. Secretary of HEW*, 364 F.2d 509 (8th Cir. 1966); *Rinehart v. Finch*, 438 F.2d 920 (9th Cir. 1971). Therefore, since this Court is not empowered to consider this case *de novo*, and since the findings are supported by substantial evidence, we have no alternative but to affirm said rulings of the Secretary, who is the statutory trier of the facts. *Timmerman v. Weinberger, supra.*

Therefore, it is the finding of this Court that the motion of the Secretary for summary judgment should be granted, and the cross-motion for summary judgment filed by the claimant should be denied. The

Court adopts this memorandum-opinion as its finding of fact and conclusion of law, and the Clerk will prepare the Order in accordance with the Court's finding herein.