551 F.Supp. 789 (1982)
Margaret H. WARNER, Plaintiff,
v.
Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.
No. 82-640C(B).
United States District Court, E.D. Missouri, E.D.
October 12, 1982.
*790 Bernhardt W. Klippel, Clayton, Mo., for plaintiff.
Welsey D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
JOHN K. REGAN, District Judge.
This matter is now before the Court upon the cross-motions of the parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.
On October 1, 1980, plaintiff applied for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423. She alleged that she became unable to work on November 11, 1976, due to a broken, twisted knee. Her claim was denied because she failed to keep two consultative internist examination appointments. There is no evidence on the record that she appealed this denial. On April 1, 1981, she again applied for a period of disability and disability insurance benefits alleging disability since November 11, 1976 due to a broken, twisted knee and fears of falling. A reconsideration determination notice dated July 31, 1981 indicates that the previous denial was still in effect because she had not submitted any new information.
On November 4, 1981, plaintiff testified and was represented by counsel at a hearing before an administrative law judge (ALJ) in Brentwood, Missouri. On December 7, 1981, the ALJ rendered a decision adverse to plaintiff. He noted that June 30, 1980, was the last date on which plaintiff met the eligibility requirements to establish her status as an insured wage-earner. He found that plaintiff's impairments consisting of a history of a fracture of her left tibia and alcohol abuse were not disabling and that her arthritis did not preclude sedentary work after June 30, 1980. (Tr. 11.) He concluded that her history of alcohol abuse was not a disability because there was no evidence she could not reduce her level of alcohol intake when she desired. (Tr. 10.) The ALJ found that plaintiff's alleged memory problems were not corroborated by medical evidence. On February 26, 1982, the Appeals Council affirmed the ALJ's decision. This then became the final decision of the defendant Secretary of Health and Human Services. On April 26, 1982, plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).
Plaintiff was born on July 24, 1922. She is a college graduate. She taught high school mathematics from 1958 until 1975. Her duties required her to walk three to four hours a day, stand three to four hours per day, sit one hour per day and bend and reach frequently. From 1943 until 1951, she worked for American Telephone and Telegraph. Plaintiff testified that her drinking problem began about 1969. She *791 stated that she has not had a drink since April of 1981. Plaintiff testified that her memory has deteriorated since her last hospitalization. She does remember she must take her medication daily. (Tr. 32-33.) She quit driving in about 1974 because she was too nervous. She testified that she ordinarily leaves the house only to visit her doctor. She testified that she cannot move about without the aid of a walker or a wheelchair. Her husband testified that he has noticed plaintiff's memory problem more recently than at any other time. He could not recall how severe her memory problem was in June of 1980. (Tr. 41.)
Arthur E. Smith, Ph.D., vocational expert, testified that plaintiff could perform the following jobs: mathematics teacher (using a wheelchair and an overhead projector), correspondence teacher, tutorial work, teacher's aide, mathematics technician, and statistician. He stated that these jobs are within the realm of her transferrable skills, are light or sedentary in nature, and exist in significant numbers in her area. He noted that if her forgetfulness was severe, it would preclude these occupations.
Plaintiff was hospitalized at St. John's Mercy Medical Center, St. Louis, Missouri, from November 11 until December 11, 1976 for injuries sustained to her left leg as a result of a fall two weeks previously. An x-ray taken in the emergency room revealed "a comminuted fracture of the proximal tibia with a major fragment representing the medial tibial plateau, where there is depression of at least a cm" (i.e. a break in the middle of plaintiff's shinbone in which the bone was broken into a number of pieces). (Tr. 169.) It was noted that she had a long history of alcohol abuse. It was also noted that she taught school for 17 years despite a drinking problem for the previous 26 years. (Tr. 146.) A psychological consultation indicated that there was no gross organic deficit in plaintiff's mental status and that her mood, motor activity, and thought contents were appropriate. (Tr. 146.) An examining physician, John Lindeman, M.D., stated that plaintiff probably had cirrhosis of the liver and chronic liver failure. An x-ray report dated November 13, 1976, indicated that there was osteoporosis (reduction in the quantity of bone) in the bony structures of plaintiff's left foot and ankle. On November 18, 1976, plaintiff underwent an open reduction operation during which a Webb bolt was inserted across the fracture site and a bone graft was performed to fill in the defect in the tibia. Her post-operative status was better than anticipated. An x-ray report dated November 26, 1976 revealed the existence of a metallic pin which was maintaining the fracture fragments in a satisfactory position. Only a very slight inferior depression of the medial tibial plateaus was noted. In light of her osteoporosis and unsteadiness, she was transferred to Forest Park Manor for convalescent care.
On September 6, 1980, plaintiff was seen in the emergency room of St. Louis County Hospital, Clayton, Missouri, complaining about pain in her left knee. The examining physician found no evidence of swelling, effusion, or acute inflammation in her knee. He observed good flexion and extension in her knee. A lateral stress examination of plaintiff's lower leg revealed some weakness. An x-ray report of her left knee indicated moderate osteoporosis with moderate degenerative arthritis. The x-ray confirmed the existence of a metallic elongated object in the proximal right tibia. She was discharged with orders to take Tylenol and to seek help for her alcohol and weight problems.
Progress notes from St. Louis State Hospital, St. Louis, Missouri, indicate that she was referred there by St. Louis County Hospital and stayed there from September 6 until September 10, 1980. Plaintiff told the examining physician that she stopped working when her husband became ill with multiple sclerosis. The doctor diagnosed her problems as an adjustment disorder with an emotional disturbance, an alcohol dependency, a passive/aggressive personality, morbid obesity (obesity which precludes normal activity), and a post-status left knee fracture. She refused to go to the alcoholic treatment rehabilitation center. Instead, *792 she accepted the recommendation that she follow treatment at home. She also agreed to follow a weight reduction diet.
An affidavit of Carl H. Lindeman, M.D., dated September 11, 1981 indicates he treated plaintiff for a period of approximately six months, probably in 1976 or 1977. He states that he examined her abdominal area and found that her liver had enlarged at least two or three inches. He states that this enlargement is consistent with a history of alcoholism. He believed that plaintiff's shortness of breath, edema of her ankles, and anasarca (general accumulation of fluid in the abdomen and lower extremities) were the products of the enlarged liver. He concluded that at the time he examined her, she would be incapable of engaging in any type of substantial gainful activity due to the combination of her physical ailments and the deterioration of her thinking processes resulting from her alcoholic condition. He prescribed digitalis to slow down plaintiff's pulse rate and diuretics to eliminate her excess fluids. He notes that she made improvements on this regimen until she stopped visiting him after approximately six months of treatment.
A letter dated October 20, 1981 by W. Lee Skimming, M.D., board-certified orthopedic surgeon, indicates that he treated plaintiff over several months during 1976 and 1977 for a leg fracture at the left knee. He was the doctor in charge of her treatment while she was hospitalized at St. John's Mercy Medical Center. He stated that she was permanently and totally disabled at that time and he opined that she was still disabled at present.
Plaintiff states that "defendant put forth no medical evidence whatsoever" that she was not disabled. Plaintiff's Complaint at 2. The burden of proving disability, however, is on plaintiff. She must show that an impairment precluded her from engaging in any substantial gainful activity for at least twelve months. Russell v. Secretary of HEW, 402 F.Supp. 613 (E.D.Mo.1975), aff'd, 540 F.2d 353 (8th Cir.1976). The Secretary's decision that plaintiff is not disabled is conclusive upon this Court if it is supported by substantial evidence, i.e. relevant evidence a reasonable person might accept as adequately supporting a decision. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).
In order for plaintiff to be eligible for Social Security benefits, she must show that she became eligible prior to the expiration of her insured status. For plaintiff to be insured, she must have 20 quarters of coverage in the 40-quarter period, ending with the first quarter of any disability. 42 U.S.C. §§ 416(i)(3)(B) and 423(c)(1)(B). Plaintiff last met this requirement on June 30, 1980. The issue before this Court is whether there is substantial evidence on the record that plaintiff was not disabled as of June 30, 1980.
Plaintiff alleges disability due to a broken knee. A leg impairment is not a per se disability. See Benson v. Matthews, 554 F.2d 860 (8th Cir.1977); Nichols v. Gardner, 361 F.2d 963 (8th Cir.1966). Plaintiff underwent an open reduction operation wherein a bolt was inserted across the fracture and a bone graft was performed. Hospital progress notes reveal that she withstood the operation better than had been expected. She did, however, have problems with osteoporosis and unsteadiness. Thus, she was transferred to Forest Park Manor for convalescent care. According to plaintiff, she remained there for approximately five months. (Tr. 69.) An x-ray of plaintiff's left knee taken in September of 1980 revealed the existence of a metallic object in her tibia and moderate osteoporosis with a moderate degenerative arthritis. Arthritis is not a per se disability. Gilliam v. Califano, 472 F.Supp. 598 (E.D.Mo.1979); Timmerman v. Weinberger, 375 F.Supp. 641 (E.D.Mo.1974), aff'd, 510 F.2d 439 (8th Cir. 1975). The medical evidence on the record fails to establish that plaintiff's osteoporosis or arthritis are of such severity that she is unable to engage in any substantial gainful activity. Although she may have been temporarily disabled during her 1976-1977 hospitalization and convalescence, there is no evidence that this disability lasted for 12 continuous months, as required by the Social *793 Security Act. 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).
Dr. Skimming stated that in 1976-1977 plaintiff was permanently and totally disabled as a result of her numerous medical problems. Dr. Lindeman also found plaintiff disabled due to the combination of her physical impairments and her deteriorating thought processes. No objective medical evidence substantiates these opinions. A qualified medical opinion is not conclusive of the ultimate determination of whether plaintiff is disabled. Russell, supra, 402 F.Supp. at 619. The ALJ may accord whatever weight he deems is warranted to doctors' conclusions which are not supported by objective laboratory tests. Id. An unsupported medical opinion may be discounted as unsubstantial proof of disability. Janka v. Secretary of HEW, 589 F.2d 365 (8th Cir.1978).
Plaintiff argues that objective medical evidence does support the doctor's opinions that she is disabled. She claims that Dr. Lindeman based his opinion on evidence of plaintiff's enlarged liver, elevated pulse rate, swelling, and shortness of breath. Dr. Skimming's opinions were based on his observations of her during treatment for her left leg fracture. Although the doctors had objective medical evidence before them when they made their opinions, the objective medical evidence, itself, does not demonstrate the existence of any disabling impairment as of June 30, 1980. There may be objective medical evidence before a doctor who finds a claimant to be disabled, but unless the objective medical evidence supports the doctor's conclusions, it cannot be said that the doctor's opinion is based upon objective medical evidence of disability. In the present case, the objective medical evidence refutes plaintiff's allegations of disability. The medical reports from September of 1980 reveal no disability. Dr. Lindeman noted that plaintiff was making improvement while he was treating her. Dr. Skimming merely conjectured that plaintiff was as disabled in October of 1981 as she was in 1976-1977. He cited no objective medical evidence indicating that plaintiff was permanently and totally disabled in June of 1980. Thus, the opinions of Drs. Lindeman and Skimming are conclusory opinions in that no objective medical evidence supports the allegation that plaintiff was disabled in June of 1980. Therefore, there is substantial evidence to support the ALJ's finding that the doctors' opinions should not be accorded substantial weight.
Plaintiff testified that she cannot walk on level ground without the aid of either a walker or a wheelchair. (Tr. 37.) The vocational expert testified that teaching positions are available in significant numbers in her area which can be performed on a sedentary basis. She also has skills transferrable to other sedentary jobs. This competent vocational testimony is reliable evidence on the issue of employability. See Curtner v. Califano, 584 F.2d 1389 (8th Cir.1978). The conclusion by the vocational expert that plaintiff can engage in significant gainful activity without the need to stand or walk is substantial evidence sustaining the ALJ's finding that jobs exist which plaintiff can perform.
Plaintiff also alleges disability due to alcoholism and its attendant health problems. For alcoholism to be disabling, plaintiff must have lost the voluntary ability to control her intake of alcohol. Adams v. Weinberger, 548 F.2d 239, 244 (8th Cir. 1977). Plaintiff taught school for seventeen years despite the existence of a drinking problem for the previous 26 years. She testified that she had not taken a drink after April of 1981. Plaintiff has not presented evidence that her alcoholism was so severe that she could not reduce her intake if she desired. There is no evidence that plaintiff has not been able to follow her home treatment plan for controlling her alcohol consumption. Furthermore, although plaintiff has exhibited health problems resulting from her years of alcohol abuse, there is no evidence that plaintiff's edema, liver enlargement, and shortness of breath, are disabling. In fact, Dr. Lindeman reported that plaintiff had responded well to treatment. If an impairment can be reasonably controlled, it is not a disabling *794 impairment. Ennis v. Califano, 427 F.Supp. 260, 264 (E.D.Mo.1977). Thus, there is substantial evidence to support the ALJ's finding that plaintiff's alcoholism has not disabled her.
Plaintiff alleges that her loss of memory precludes her from engaging in substantial gainful activity. See Dunlap v. Harris, 649 F.2d 637, 638-39 (8th Cir.1981). The vocational expert noted that if plaintiff's memory problems were as severe as she implied, this mental impairment could prevent her from engaging in substantial gainful activity. Thus, whether plaintiff's memory problems were disabling turned on a consideration of plaintiff's testimony and the objective medical evidence. A psychological consultation in 1976 revealed an "appropriate" thought content. Plaintiff has been able to compensate for her alleged deteriorating memory by writing herself notes. Also, plaintiff apparently retains the ability to remember important matters such as taking medicine every day. Her husband could not recall the degree of severity of her memory failure on June 30, 1980, the date she last met the eligibility requirements. He testified only that he has noticed her memory problems more in recent times than at any other time. There is no evidence that her thought processes have deteriorated to the point where she is unable to engage in any substantial gainful activity. Thus, there is substantial evidence on the record to support the ALJ's finding that plaintiff's memory problems are not disabling.
Despite a careful evaluation of the plaintiff's alleged combined impairments, this Court finds that plaintiff has failed to carry her burden of proof. There is no evidence that plaintiff cannot work despite her impairments. There is substantial evidence in the record to support the ALJ's finding that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, plaintiff's motion for summary judgment must be denied and defendant's motion for summary judgment must be sustained.